James L.Macklin, *pro-se*

10040 Wise Rd.,
Auburn,
California,
95603.



**FILED**

JUN - 4 2010

CLERK, U.S. DISTRICT COURT
EASTERN DISTRICT OF CALIFORNIA
BY _____
DEPUTY CLERK

## UNITED STATES DISTRICT COURT

## EASTERN DISTRICT OF CALIFORNIA

**James L.Macklin**, *pro-se*

  Plaintiff,

  vs.

**SELECT PORTFOLIO SERVICING, INC.,** represented by the C.E.O Mathew Hollingsworth, *and/or his successor,* in his official capacity

**MORTGAGE ELECTRONIC REGISTRATION SYSTEMS, INC.,** represented by R.K.Arnold *and/or his successor,* in his official capacity

**DEUTSCHE BANK NATIONAL TRUST CO., AS INDENTURE TRUSTEE, OR ITS' PREDECESSORS OR AGENTS,**

)Case No.: 2:10-CV-1097 KJM

)
)
)
)
)
**)AMENDED COMPLAINT FOR**
**) TEMPORARY RESTRAINING**
**)ORDER TO ESTOP THE**
**)DEFENDANTS FROM SELLING,**
**) TRANSFERRING,FORECLOSING**
  **AND/OR OTHERWISE TAKING**
  **THE PLAINTIFF'S REAL**
  **PROPERTY,**

**UNLAWFUL OR FRAUDULENT**
**BUSINESS ACT OR PRACTICE,**

**NEGLIGENT INFLICTION OF**
**EMOTIONAL DISTRESS,**

**VIOLATION OF DUE PROCESS,**

**FRAUD BY CONCEALMENT,**

**BREACH OF CONTRACT,**

Amended Complaint for temporary restraining order - 1

**BREACH OF FIDUCIARY DUTY**

represented    by    Robert    J.
Jackson, Amy E.Starret, *and/or*
*his successor,* in his official
capacity


**AND    DOES    (investors,**
**indispensable parties)**


Defendants.

_____


James L. Mackiln, the Plaintiff herein, residing at 10040 Wise
Rd., Auburn, California, 95603 in his complaint against Select
Portfolio Servicing, Inc., Deutsche Bank National Trust Co. as
Indenture Trustee for the Beneficial Holders of Mortgage Loan
Trust 2006-2 Asset Backed Notes, and Mortgage Electronic
Registration Systems, Inc., alleges the following upon
information and belief:

**DEFENDANTS**

The Loan Servicer, Select Portfolio Servicing, Inc., is a
registered Corp. within the State of California and has
represented themselves as a debt collector with right, title
and interest, but is merely a Fictitious Payee. Matthew

Hollingsworth is the C.E.O of Select Portfolio Servicing, Inc. At all times mentioned herein, Select Portfolio Servicing, Inc. is doing business within the statutory boundaries of the State of California.

Accredited Home Lenders, Inc. (not named herein) has filed for bankruptcy in April, 2009 and is the party named as Beneficiary in the Deed of Trust. They have nominated Mortgage Electronic Registration Systems, Inc. (MERS) solely as a "nominee beneficiary" in the said Deed. Therefore, in all of the subsequent assignments made by MERS, the assignee can be conferred with only the status as a "Nominee" and have no beneficial interest to the deed. *See: In re Weisband (Ariz.); Mtg. Elec. Reg. Sys., Inc. v. Neb. Dept. of Banking and Finance, 704 N.W. 2d 784, 786-87(Neb, 2005)(MERS represented that it "only holds legal title to members' mortgages in a nominee capacity and is contractually prohibited from exercising any rights with respect to the mortgages..."; In re Sheridan, 2009 WL 631355, *4(Bankr. D. Idaho 2009); In re Mitchell, 2009 WL 1044368, *3-4(Bankr. D. Nev. 2009); In re Jacobson, 402 B.R. 359, 367 (Bankr. W.D. Wash. 2009).*

At all times mentioned herein, Accredited Home Lenders, Inc. was conducting business within the statutory boundaries of the State of California.

At all times mentioned herein, Mortgage Electronic Registration Systems, Inc. is carrying out its' business

within the statutory boundaries of the State of California. However, MERS, Inc. is not, and has not been registered with the California Dept. of Corporations, since 2004 and is in violation of many state laws, including, but not limited to: **Cal. Revenue and Taxation Code §§ 23304, 23305(A).** *RULE OF LAW: During suspension, a Corporation is, in fact, "shorn of all rights, save those expressly reserved by the statutes."* **(Ransome Crummey Co. v. Superior Court, (1922)188 Cal. 393, 397.) referring to Cal. Bank & Corp. Franchise Act § 32).** I contend that among the rights lost by a suspended Corporation are the rights to conduct business or pursue legal matters in a Court of Law or non-judicially. (See appeal of **Al Tirpa & Assoc. 97-SBE-007, Feb 26, 1997). Revenue and Taxation Code section 25962.1 makes it a crime for any person to purport to exercise the powers of a Corporation which has been suspended pursuant to Revenue & Taxation Code section 23301.**

Indeed, in *UNITED STATES v. STANDARD BEAUTY SUPPLY STORES, INC.*, No. 75-2258, 9th cir., 561 F2d 774; 1977 US App. Lexis 11446 (1977) the Court reasoned: *"...to back up the suspension, the California Legislature also provided that any contract made in violation of 23301 was voidable at the instance of other parties to the contract, see Cal. Rev. & Tax Code 23304 (West 1970), and that any person purporting to exercise the Corporate powers, rights and privileges would be subject to criminal penalties and fines, see Id. § 25962.1...".*

Deutsche Bank National Trust Co. is the 'Indenture Trustee' on behalf of the Holders of the Notes of Accredited Home Lenders Inc. and was assigned limited interest by MERS. Robert J.Jackson and Amy E. Starrett, who are attorneys of record for non judicial foreclosure, are acting as Agents for Deutsche Bank National Trust Co.  At all times mentioned herein, Deutsche Bank National Trust is doing business within the statutory boundaries of the State of California.

Wells Fargo Bank Mortgage Div. (not yet named herein) is the broker behind the loan transaction. At all times mentioned herein, Wells Fargo is doing business within the statutory boundaries of the State of California.

The Plaintiff is not aware of the true names and capacities of the Investors/Indispensible parties (Defendants), sued as **DOES** and, therefore, sues these Defendants by such fictitious names. Each of these fictitiously named Defendants is responsible in some manner for the activities alleged in this Complaint. Plaintiff requests leave of this Court to amend and identify the parties for inclusion in this matter at a later date.

Any allegation on any corporate or other business entity in the complaint would mean that the said defendant did the acts alleged through its officers, directors, employees, agents and/or representatives while they were acting within their actual or ostensible scope of authority.

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**JURISDICTION AND VENUE**

This Court assumes original jurisdiction in the instant matter under 28 U.S.C. 1332 which provides that

*(a) The district courts shall have original jurisdiction of all civil actions where the matter in controversy exceeds the sum or value of $75,000, exclusive of interest and costs, and is between - (1) citizens of different States; (2) citizens of a State and citizens or subjects of a foreign state; (3) citizens of different States and in which citizens or subjects of a foreign state are additional parties; and (4) a foreign state, defined in section 1603(a) of this title, as plaintiff and citizens of a State or of different States.*

Thus in spite of the fact that the Plaintiff is a citizen of California, while the Defendant corporate entities are all located at different States; since the value of the subject matter in question is $659,000.00, as well as the amount mentioned in the Note is the same, the matter in controversy thus exceeds the sum or value of $75,000, exclusive of interest and costs, thereby conferring jurisdiction to this Court.

As claimed in the 'Notice of removal of the action,' of the Defendants, the Defendants Robert J. Jackson, and Amy E. Starret who are attorneys on record, on the eviction action pending against the Plaintiff in the Placer County Superior, [*Deutsche Bank National Trust Co. v. Macklin* [Case No. M-CV-

45238]], cannot seek protection by any 'litigation privilege' under California law, since "California Civil Code section 47, subdivision 2 confers an absolute privilege, it attaches only to **statements or publications**, but *not actions* of the person invoking the privilege." (***Westlake Community Hospital v. Superior Court*, (1976) 17 Cal.3d 465, 482, 131 Cal.Rptr. 90, 551 P.2d 410**) Here the attorneys of record (Defendants) have colluded with the other Defendants in committing the fraudulent act of Wrongful Foreclosure, unlawful conversion, and negligent infliction of emotional distress, thereby giving way to a genuine cause of action against them in this matter. In addition to this, the Attorneys are acting as agents of Deutsche Bank National Trust, as Indenture Trustee and therefore are in concert with Defendants knowingly, willfully and intentionally, having the legal knowledge of the herein stated violations of law.

## STATEMENT OF FACTS

The Plaintiff had availed a "loan" from Accredited Home Lenders, Inc. based on a Deed of Trust. The real property that was kept as security for the loan transaction is his primary dwelling. Accredited Home Lenders, Inc. (Beneficiary) incorporated Mortgage Electronic Registration Systems, Inc. (MERS) as the "nominee beneficiary" in the Deed. In accordance with this, a Note was issued by the Plaintiff valued at $659,000 for the benefit of the alleged "Lender", Accredited Home Lenders. However, Plaintiff was in contract to receive a

loan from the purported "Lender" and became aware that the
Lender never loaned him anything, rather, the Lender **exchanged**
Plaintiffs' Note for a check which was provided by a third
party warehouse lender at a **discount** to Lender (undisclosed to
borrower), thus, changing the substance of the terms of the
contract. The Lender subsequently received a "spread" (un-
disclosed) of the discount amount and the actual amount
purported in the contract of approximately 2.5% of the value
of the loan. Since the Lender never risked any of its' own
assets, it could never be harmed and, therefore, did not show
equal or valuable consideration in the transaction. Plaintiff
shall evidence these facts at trial and possesses the actual
Sale & Servicing Agreement, Trust Indenture, and all
subsequent accounting from the original transaction inclusive
of the securitization chain of accounting.

In the original loan application, the Plaintiff's income was
grossly over-stated by the Broker, Wells Fargo Bank Mortgage.
They also placed false information on his period of service in
the current job, showing it as 7 years, while it was only 2
years and a total of 10.5 years experience in the industry,
while it was only 4 years. And Defendants relied on a
statement by co-Defendants that Plaintiff lived in the home
for more than five (5) years when plaintiff had only lived
there for less than a year, this was done to facilitate a
"seasoned" residence and further evidences the willing nature
of fraudulent practices employed by Defendants with full
knowledge and intent. They had knowingly lied on this loan

application to qualify the Plaintiff for the said loan. The lender, and all subsequent parties to the transaction, in turn relied heavily upon this information without verifying it.

The Deed of Trust was signed on April 19th 2006 (though dated as April 14th, 2006), while the Note was signed by the Plaintiff on April 14th, 2006 itself. The Deed was filed for public record at the Placer County Recorder's Office.

The re-payment of the alleged debt commenced in May, 2006, and continued until August, 2008 when Plaintiff made a claim of genuine doubt regarding the 'true identity' of his creditor as well as disputing the authenticity of his signature in the crucial loan related documents. Though he tried to bring to the attention of the Defendants (documented through an administrative record kept by Plaintiff) the fraudulent information in the loan documents, they blatantly ignored all of his assertions. Plaintiff rescinded his signature pursuant to the remedies within TILA well within the time allowed by statute. Defendants did not answer timely, and when they did, it was without lawful authority and specifically did not qualify as a lawful response, never having followed it's responsibilities under a qualified rescission. **Reg. Z §§ 226.15(a)(2), 226.23(a)(2), Official Staff Commentary § 226.23(a)(2)-1 and 15 U.S.C. § 1635(b) and other applicable law contained in the Federal Truth In Lending Act (TILA). Service of the Notice of Rescission was done in accordance with the above named laws by Certified Mail with Return**

*Receipt of proof of Delivery to the Defendants and is proof of Notification pursuant to the Official Staff Commentary, 226.2(a)(22)-2. See In re Moore, 117 B.R. 135 (Bankr. E.D. Pa. 1990). The Statute and Regulation specify, By Rule Of Law, that the security interest, promissory note or Lien arising by operation of law on the property becomes automatically void.*

Mortgage Electronic Registration System Inc. (MERS, who is the "nominee beneficiary" in the Deed), later made a restricted assignment of the Deed to  Deutsche Bank National Trust Co. by making them the Indenture Trustee in the Deed of Trust. However, the assignment came three months **after** Deutsche Bank had made a Substitution of Trustee, **without authority,** to Quality Loan Services, Inc. in order to implement the wrongful foreclosure action. This Trustee who had, in fact, only the status as that of a "nominee beneficiary", without any adequate *locus-standi* against the Plaintiff in the said loan transaction, initiated fraudulent sales and foreclosure proceedings against him through Select Portfolio Services, Inc. (Debt Collectors), who acted as their agents.

This action is thus based on the Defendant's numerous acts of fraud upon the Plaintiff, the Court and upon the People of California, inclusive of any and all Trustee sales, judicial or non-judicial proceedings, as well as the Defendant's purposeful fraud in attempting to appear as a CREDITOR to the Court, while fully aware of the fact that none of the

Defendants are the CREDITOR, and, therefore, NOT THE REAL PARTY IN INTEREST in the wrongful foreclosure matter.

The Defendants have clearly failed to appear before this Honorable Court with 'clean hands,' while the Plaintiff is genuinely seeking justice under Federal Law and California Code.

## CAUSES OF ACTION

Plaintiff respectfully submits as follows:

## I. THE NON-JUDICIAL FORECLOSURE INITIATED BY THE DEFENDANTS IS VOID AND ILLEGAL

### 1. The Defendants lack Authority and standing to conduct the Trustee Sale and non-judicial foreclosure

It is hereby submitted before this Honorable Court that the Defendants herein fail to possess the required authority and standing to initiate the Trustee sale and foreclosure proceedings against the Plaintiff, as they are neither the 'creditors' nor the 'real party in interest' in the instant case, thereby making the Trustee sale and non-judicial foreclosure initiated by them against the Plaintiff's real property void.

Since, in the instant case, the loan transaction was based on a Deed of Trust, the 'power of sale' under the alleged Deed has been conferred on the alleged Trustee (Deutsche Bank National Trust). For the Trustee to conduct the Trustee sale and foreclosure, they are required to be the 'real party in interest.'

The 'real party in interest' is defined as a person "'who has the right to sue under the substantive law. It is the person who owns or holds title to the claim or property involved, as opposed to others who may be interested or benefit by the litigation." **(O'Flaherty v. Belgum (2004), 115 Cal.App.4th 1044)**

As per the Deed of Trust, Accredited Home Lenders, Inc., (lender) named Mortgage Electronic Registration Systems Inc. (MERS) as the "nominee beneficiary". And there was a separation of the Deed of Trust and the Promissory note at the time of the transaction, whereby MERS was made the holder of the Deed of Trust.

"The practical effect of splitting the deed of trust from the Note is to make it impossible for the holder of the Note to foreclose, unless the holder of the deed of trust is the agent of the holder of the Note. Without the agency relationship, the person holding only the Note lacks the power to foreclose in the event of default. The person holding only the deed of trust will never experience default because only the holder of

the note is entitled to payment of the underlying obligation." *Bellistri v. Ocwen Loan Servicing, LLC*, **284 S.W.3d 619, 623 (Mo. App. 2009)** From the facts available at hand, it cannot be inferred that there existed such an agency relationship between MERS and the Holder of the Note, as there doesn't exist any Agency Agreement.

**US Bankruptcy Court, Eastern Dist. Of California: Honorable Ronald H. Sargis, Sacramento, Ca., May 20, 2010, Case No.10-21656-E-11   Ricky Walker; To wit: "Under California law, to perfect the transfer of mortgage paper as collateral the owner should physically transfer the Note to the transferee. Bear v. Golden Plan of California, Inc., 829 F.2d 705, 709 (9th Cir.1986). Without physical transfer, the sale of the Note could be invalid as a fraudulent conveyance, Cal. Civil Code 3440, or as unperfected Cal. Comm. Code 9313-9314, see Roger Bernhardt, California mortgage and Deed of Trusts, and foreclosure litigation 1.26 (4th Ed. 2009)".** Since it is well settled law that the Note and the Deed are inseparable, any and all assignees of the Deed, as an incident to the Note, are invalid on their face and constitute evidence of the fraud perpetrated upon Plaintiff, the People of California and this Court.

MERS later transferred their limited interest under the Deed of Trust to Deutsche Bank, making them the **"Nominee"** by way of an assignment. There is no evidence to show that the Note was also transferred to MERS along with the Deed, nor can there

possibly be due to the sale and subsequent securitization of the Note. And they are found to have miserably failed in presenting the 'Genuine Original Promissory Note' before the officers acting in the non-judicial foreclosure, which is suggestive of the fact that they are not in possession of the Genuine Original Promissory Note.

It is a settled position in law that "the Deed of Trust is a mere incident of the debt that it secures and an assignment of the debt carries with it the security instrument. Therefore, a Deed of Trust is inseparable from the debt and always abides with the debt. It has no market or ascertainable value apart from the obligation it secures. A Deed of Trust has no assignable quality independent of the debt, it may not be assigned or transferred apart from the debt, and an attempt to assign the Deed Of Trust without a transfer of the debt is without effect." (*La Salle Bank Nat. Ass'n v. Lamy*, 2006 WL 2251721, at \*2 (N.Y. Sup. 2006)) (unpublished opinion)

MERS, not being the owner of the Note, would be entitled to transfer only whatever interest that they had in the Deed of Trust, and nothing more. This is quite evident from the legal maxim- *"Nemo plus juris transferre ad alium potest quam ipse habet"* meaning 'no one can transfer a greater right than he himself has.' It was observed in the recent case of **Landmark Nat. Bank v. Kesler**, 216 P.3d 158 (Kan. Sup. Ct., 2009) that "any attempt to transfer the beneficial interest of a trust deed without ownership of the note is void" and is consistent with California law. Thus, by way of the assignment, there

cannot be a transfer of the note or the beneficial interest in the Deed. Deutsche Bank merely **"steps into the shoes"** of the "nominee beneficiary" with no right, title, or interest whatsoever.

Select Portfolio Servicing, Inc., who acted as the debt collector in violation of FDCPA § 1692 et. seq., and in the case herein, performed their activities as an agent and in the limited capacity of "Attorney-in-Fact" for the Trustee (Deutsche Bank). Since "an agent has no implied authority to do what the principal is not empowered to do." (**Amalgamated Clothing W'K'Rs v. Kiser, 174 Va. 229 (Va, 1939))** it can be inferred that the Debt collector (agent) cannot be deemed to be a 'real party in interest' which the alleged principal has failed in also. Thus, the Trustee sale and foreclosure proceedings initiated by the Defendants are void and without authority.

## 2. The Defendants lack standing as a Holder in Due Course

UCC 3-302(3)defines a "holder in due course": **(a)** *Subject to subsection (c) and Section 3-106(d), "holder in due course" means the holder of an instrument if:*

*(2) the holder took the instrument (i) for value, (ii) in good faith, (iii) without notice that the instrument is overdue or has been dishonored or that there is an uncured default with respect to payment of another instrument issued as part of the same series, (iv) without notice that the instrument contains*

*an unauthorized signature or has been altered, (v) without notice of any claim to the instrument described in Section 3- 306, and (vi) without notice that any party has a defense or claim in recoupment described in Section 3-305(a).*

*(c) Except to the extent a transferor or predecessor in interest has rights as a holder in due course, a person does not acquire rights of a holder in due course of an instrument taken (i) by legal process or by purchase in an execution, bankruptcy, or creditor's sale or similar proceeding, (ii) by purchase as part of a bulk transaction not in ordinary course of business of the transferor, or (iii) as the successor in interest to an estate or other organization.*

The Defendants in the instant case have not been able to produce the 'genuine original promissory note' before the non-judicial officers at the foreclosure proceedings, which would be the only evidence to show that they are the 'real party in interest'. The Plaintiff hereby contends that even if the Defendants are found to be in possession of the note, they cannot fall under the definition of a 'holder in due course' as provided under the UCC 3-302(3).

This is because of the fact that the Defendant herein would have received a copy of the Note after the Note was determined to be in default. The Defendant was fully informed that the Note and/or the Mortgage was disputed, delinquent and was in dishonor before he became a holder of the copy of the Note. Thus even if the Defendant did prove the possession of the

Genuine Original Promissory Note, the Defendant's claims are still invalid as he would not amount to a "Holder in due Course" as provided by the Uniform Commercial Code § 3-302.

### 3. Violation of Fair Debt Collection Practices Act

The Plaintiff hereby submits before this Court that Select Portfolio Servicing, Inc. (debt collector) has violated the Fair Debt Collection Practices Act, 15 U.S.C.§1692g(b)by failing to comply with the procedural requirements under the Act.

15 U.S.C. Section 1692 (g) (b) provides that *"If the consumer notifies the debt collector in writing within the thirty-day period* **(or within three years of discovering TILA violations)** **described in subsection (a)** *of this section that the debt, or any portion thereof, is disputed, or that the consumer requests the name and address of the original creditor, the debt collector shall cease collection of the debt, or any disputed portion thereof, until the debt collector obtains verification of the debt or a copy of a judgment, or the name and address of the original creditor, and a copy of such verification or judgment, or name and address of the original creditor, is mailed to the consumer by the debt collector."*

The Plaintiff in this case contends that the reason for his default in repayment of the loan amount due, was his genuine doubt regarding the true amount owed and the underlying

applications used, being filled with false information, and
the true identity of the creditor. He accordingly raised a
formal dispute as to the authenticity of his signatures and
the actual accounting of the transaction in its' entirety. But
request for an explanation was fully ignored and neglected by
the Defendants, bringing about a violation of 15 U.S.C.
Section 1692 (g)(b). Factual evidence of the lawful requests
and subsequent failures at law by Defendants shall be provided
by Plaintiff at trial.

## II.  BREACH OF FIDUCIARY DUTY AND VIOLATION OF THE TRUTH IN LENDING ACT (Regulation Z)

### 1. Disclosure Requirements

"The elements of a cause of action for breach of fiduciary
duty are: 1) the existence of a fiduciary duty; 2) a breach of
the fiduciary duty; and 3) resulting damage." (*Pellegrini v. Weiss*, 165 Cal. App.4th 515, 524, 81 Cal.Rptr.3d 387 (2008))

Under California law, "A mortgage broker owes a fiduciary duty
to their client." (**Cal. Civ.Code § 2079.24; *Zimmer v. Nawabi*,
566 F.Supp.2d 1025 (E.D.Cal.2008)**) This duty obligates the
brokers to "make a full and accurate disclosure of the terms
of a loan to borrowers and to act always in the utmost good
faith toward them." (***Wyatt*, 24 Cal.3d at 782, 157 Cal.Rptr.
392, 598 P.2d 45 (citing *Rattray v. Scudder*, 28 Cal.2d 214,
223, 169 P.2d 371 (1946)).**

§ 226.17 of the Truth in Lending Act mandates the 'General Disclosure Requirements', whereby the creditor is duty bound to make the disclosures clearly and conspicuously in writing, in a form that the consumer may keep. Under sub-section (c) the disclosures thus made *shall reflect the terms of the legal obligation between the parties. And if any information necessary for an accurate disclosure is unknown to the creditor, the creditor shall make the disclosure based on the best information reasonably available at the time the disclosure is provided to the consumer, and shall state clearly that the disclosure is an estimate*(§ 226.17 (2) (i)). In addition to this, § 226.18 details the 'Content of disclosures.'

In the instant matter the Defendants clearly had the fiduciary duty under the Deed of Trust, to protect the Plaintiff's interest, while granting the loan. By showing an enhanced amount as the Plaintiff's income, for the purpose of obtaining the loan, the broker failed to perform their duty towards the Plaintiff, by breaching the disclosure requirements under the Truth in Lending Act. While the Lender also owed a contractual duty to the Plaintiff to verify the information received from the broker through the Plaintiff's tax returns, bank account statements, and other financial documents which were provided as a "full document loan" by the Plaintiff. This is because TILA mandates the creditors provide their borrowers with clear and accurate disclosures of borrowers' rights, finance

charges, the amount financed, and the annual percentage rate.
(15 U.S.C. §§ 1632, 1635, 1638)

The factual information available are indicative of the fact
that the Broker had intentionally marked his income in the
loan application document as $29,000 per month while his tax
returns clearly indicated an income of approximately $8,000
per month. And on the second mortgage application, they showed
his income as $23,000 per month which was still almost triple
his actual income. The loan document indicated a total of
$65,000 in cash in his bank account, which was not ever there,
and the home was valued at only $615,000 in the second
(subordinate financing) loan, while being valued at
$685,000.00 for the first loan. This represents false and
misleading information provided by the lender/broker to be
relied upon by possible investors and being transmitted across
state lines on U.S. Government forms. They also placed more
false information pertaining to his vocation, where his job
experience in the current job was marked as 7 years instead of
2 years (actual) and a total of 10.5 years in the industry,
while it was only 4 years.    Defendants profited by these
actions, which were self-serving and were done knowingly and
intentionally in order to reap profits for all participants in
the loan/securitization scheme and was perpetrated upon many
other California residents.

The Defendants, again, with the *malafide* intention of
converting the Plaintiff's real property from its' true owner

to the Defendants, introduced "legalese" into the Deed, which the Plaintiff was unable to understand in its real sense. In addition to this they fraudulently damaged the 'genuine original promissory note' issued by the Plaintiff to securitize the Note. The Defendants, through these wrongful means, thus could initiate the Trustee sale and foreclosure proceeding with the support of the erroneous information provided by the broker/lender and further profit by the "Credit Enhancements" provided for by the mortgage loan trust investments in the form of default swaps, loan loss insurance, and various other investments designed for the specific purpose of profiting from the assured default of thousands of fraudulent loans. All of this was by design and the Plaintiff has the supporting securitization chain of documents which shall be produced at trial.

## 2. Right to Rescission

The Truth in lending Act, § 226.23 (a) grants the Consumers with the right to rescind the loan under certain situations. 15 U.S.C. § 1635(a) provides that in the case of a consumer credit transaction in which the creditor acquires a security interest in property to be used as the principal residence of the obligor, the obligor "*shall have the right to rescind the transaction until midnight of the third business day following the consummation of the transaction or the delivery of the information or rescission forms.* "*An obligor who exercises their right to rescind*" *is not liable for any finance or other*

*charge, and any security interest given by the obligor, including any such interest arising by operation of law, becomes void upon rescission."* (Id. at § 1635(b)) This right was never disclosed to Plaintiff in the timely and lawful manner in which the law provides.

The only requirement to be satisfied, for the obligor to exercise the right to rescind, is that he must *"notify the creditor of the rescission by mail, telegram, or other means of written communication."* (12 C.F.R. § 226.23(a)(2)) And within 20 days of receiving notice of rescission, *"the creditor shall return to the obligor any money or property given as earnest money, down payment, or otherwise, and shall take any action necessary or appropriate to reflect the termination of any security interest created under the transaction."*

Plaintiff herein clearly asserts that he sent the Defendants a Qualified Written Request/Notice of Loan Rescission, received by Defendants via certified mail on Feb. 12, 2009, while the Defendants did not timely respond to this. This is a substantive breach of the Defendants' duty to act under TILA. ***See: TILA, Reg. Z, 12 CFR 226.23:...*** **"the security agreement signed with a lender can be rescinded if they have not provided the proper disclosures. Although home mortgages are exempt from some rescissions, this option becomes available if they begin foreclosure and they stated an incorrect amount of debt."** Plaintiff has factual evidence in his possession that

Defendants did receive third party payments into the Trust payment account through the mechanism of TARP/TARF funds, credit default swaps, credit enhancements through ancillary investments by the Trust, over-collateralization, loan loss insurance, and a variety of other payments. Defendants were aware of these payments and their effect upon amounts allegedly owed under the Note, and have purposely secreted these amounts so as to protect the interests of the Indenture Trustee, Swap Provider, Note insurer, and Owner Trustee, all of whom are Beneficial Holders of the underlying trust. Pursuant to the Deed of Trust signed by Plaintiff, there is a specific priority of application of funds received by the Trust which states: 1. Payment of interest on the Note, 2. Payment of Principle on the Note, etc.. Trust administrators have elected to ignore their duties to the Borrower and investor, while taking investment profits, TARP funds, and all other methods of payment for their own unjust enrichment. Plaintiffs' original signature, payments and Note along with investors funds are the source of these profits, without disclosure from the alleged "Creditor".

**In re Pearl Maxwell, 281 B.R. 101: Full disclosure was not given and therefore an unconscionable contract.**

This can also be conceived as a confession of the Defendant that they are committing fraud, knowing that they are not the 'creditor' and that they are not the 'real party in interest' in the instant matter, as "Silence can only be equated with

fraud where there is a legal or moral duty to speak or when an inquiry left unanswered would be intentionally misleading." **(United States v. Kis, 658 F.2d, 526 (7th Cir. 1981) Cert Denied, 50 U.S. L.W. 2169; S. Ct. March 22, (1982))**

Since the Mortgage Loan Trust, AMLT 2006-2, where the Note allegedly is held as trust property, is, in fact, a REMIC Trust, Deutsche Bank is treating the Notes as debt, and therefore cannot possibly be a creditor. And, pursuant to the Trust Indenture, the investors who possess "Book-Entry Notes" with a certificated interest, not right, title, and interest in the underlying Notes, are merely the recipients of the trust profits at a given rate pre-determined long before the loan transaction was ever even contemplated. Thus, the entire accounting of the actual Payment Account of the mortgage loan trust, along with ancillary accounts authorized in trust, must be brought forward to determine the true condition of the alleged debt owed, if any, by Plaintiff.

## 3. Prohibited acts or practices in connection with credit secured by a consumer's principal dwelling

TILA prohibits certain acts and practices in connection with the credit secured by the consumer's principal dwelling. One such act is the **'misrepresentation of value of consumer's dwelling.'** According to § 226.36(1) in connection with a consumer credit transaction secured by a consumer's principal dwelling, no creditor or mortgage broker, and no affiliate of a creditor or mortgage broker shall directly or indirectly

coerce, influence, or otherwise encourage an appraiser to misstate or misrepresent the value of such dwelling. And a creditor who knows, at or before loan consummation, of a violation of this shall not extend credit based on such appraisal unless the creditor documents that it has acted with reasonable diligence to determine that the appraisal does not materially misstate or misrepresent the value of such dwelling. The face of the two separate loan applications, filled in by the Broker on behalf of the Lender, evidence a disparity in the amount of $65,000.00. This is fraud in the inducement, and breach of contract and duty by Defendants. It may also constitute criminal activities by Defendants.

The Plaintiff has been able to show that the loan was obtained by the broker by intentionally incorporating incorrect information in the loan documents, as it pertains to the value of the consumer's dwelling. Additionally the lender, when granting the loan, negligently relied upon this false and misleading information, and conferred him with a loan, which was not lawful under the statutory regulations. The lender failed to exercise due diligence to determine as to whether there was any misstatement in the loan documents as regards to the value of the dwelling. This has given way to a patent violation of TILA.

**III.** **THE ACTS OF THE DEFENDANTS AMOUNT TO FRAUD BY CONCEALMENT**

"Concealment is a species of fraud or deceit." (*Blickman Turkus, LP v. MF Downtown Sunnyvale, LLC*, **162 Cal. App.4th 858, 868, 76 Cal.Rptr.3d 325 (2008)**) The following elements must be proven to establish a fraud by concealment claim: 1) the defendant concealed or suppressed a material fact, 2) the defendant was under a duty to disclose the fact to the plaintiff, 3) the defendant intentionally concealed or suppressed the fact with the intent to defraud the plaintiff, 4) the plaintiff was unaware of the fact and would not have acted as he did had he known of the concealed or suppressed fact, and 5) the plaintiff sustained damages as a result of the concealment or suppression of the fact (*Lovejoy v. AT & T Corp.*, **92 Cal.App.4th 85, 96, 92 Cal.App.4th 1016F, 111 Cal. Rptr.2d 711 (2001)**)

From the aforementioned contentions it has been established that there has been an infringement of the disclosure requirements by the Defendants by way of an active concealment of certain material facts. By obtaining sanction for a loan, for a higher amount than what the application deserved, the Defendants have been able to receive a proportionally greater amount of fees, investment profits and bonuses which he otherwise would not have enjoyed. Added to this, the lender, by neglecting to verify the veracity of the loan documents, has permitted the loan without verifying *viability* of future payment. The intention to commit fraud, or knowingly act upon the fraud of another, is quite explicit from this. The

recipient of the fruits of the fraud is just as culpable as the party executing the fraud.

The aspect of intentional fraud can further be proved from the Defendant's act of issuing the Plaintiff a check for loan purposes, without utilizing their own assets, exchanging the Plaintiff's Note at a discount, without disclosure of the fact, thereby changing the substance of the terms of the alleged loan. This was fully done by Defendants without the Plaintiff's knowledge and with forethought and malice.

## IV. **THERE HAS BEEN A VIOLATION OF THE PLAINTIFF'S FUNDAMENTAL RIGHT UNDER 'DUE PROCESS' DUE TO LACK OF NOTICE**

In the Deed of Trust between the Plaintiff and the Defendant, the Defendant intentionally concealed the existence of certain hidden clauses, especially the one known as the 'Power of Sale Clause', which grants power to the Defendant to sell Plaintiffs' property without due process. The Plaintiff was not given Notice of this clause, which is now being used by the Defendants to unlawfully confiscate the Plaintiff's real property. This has resulted in a clear-cut violation of the Plaintiff's fundamental right to due process (as guaranteed by the 14th Amendment to the US Constitution and the Constitution of California).

"*Procedural due process mandates that an individual be afforded notice and an opportunity for a hearing before he is*

*deprived of any significant property interest"* (**Randone v. Appellate Department** (1971) 5 Cal.3d 536, 541, 96 Cal.Rptr. 709, 488 P.2d 13) *"When notice is a person's due process, which is a mere gesture, it is not due process. The means employed must be such as one desirous of actually informing the [person] who might reasonably adopt to accomplish it."* (**Mullane v. Central Hanover Bank & Trust Co.**, (1950) 339 U.S. 306) A hidden 'power of sale clause' in a deed would in effect create a cognovit note/ confession of judgment, thereby creating conditions for the violation of the California Constitution.

In addition to this, the non-judicial foreclosure in California is governed by a comprehensive statutory scheme which provides that "upon default by the trustor, the beneficiary may declare a default and proceed with a non-judicial foreclosure sale. The foreclosure process is commenced by the recording of a notice of default and election to sell by the trustee. After the notice of default is recorded, the trustee must wait three calendar months before proceeding with the sale. After the three-month period has elapsed, a notice of sale must be published, posted and mailed 20 days before the sale and recorded 14 days before the sale." (Civ. Code, § 2924 et seq) "To be effective, a copy of the notice of trustee's sale—at least 20 days prior to the sale—must be mailed by registered or certified mail, postage prepaid, to the trustor, sent to his or her last known address

if different from the address listed on the deed of trust"
(Civ. Code, § 2924b, subd. (b)(2))

It is submitted before this court that the Defendants have
intentionally omitted to act in accordance with these
provisions. All assignments have been falsely presented to the
Placer county Recorders' Office as evidence of right, title
and interest, while purporting to Plaintiff that Defendants
have "duly perfected" title through the statute. Plaintiff
shall evidence to this Court the actual recorded substitution
of trustee, Corporate assignment of trustee, and other
recorded documents used by Defendants to unlawfully secure
Plaintiffs' property without lawful authority. This represents
unlawful conversion and theft by Defendants. All recorded
documents used by Defendants are without lawful authority and
have been altered and falsified to meet their self-serving
interests. Plaintiff shall produce these documents at trial.

## V. THE DEFENDANTS HAVE ENGAGED IN UNLAWFUL, UNFAIR AND FRAUDULENT BUSINESS ACTS AND PRACTICES

Section 17200 of California Unfair Competition Law creates a
cause of action for an 'unlawful, unfair or fraudulent
business act or practice.' Its coverage has been described as
"sweeping, embracing anything that can properly be called a
business practice and at the same time is forbidden by law."
(*Cel-Tech Communs., Inc. v. L.A. Cellular Tel. Co.,* **20 Cal.4th
163, 83 Cal.Rptr.2d 548, 560, 973 P.2d 527 (1999)**

## 1. RESPA violation

The Plaintiff's claim for unfair business practices can be gathered upon defendants' violation of the Real Estate Settlement Procedures Act, since the Business and Professions Code section 17200 'borrows' violations of other laws and treats them as unlawful business practices independently actionable under section 17200," (*Farmers*, 2 Cal.4th at 383, 6 Cal.Rptr.2d 487, 826 P.2d 730; *Monaco v. Bear Stearns Residential Mortgage. Corp.*, 554 F.Supp.2d 1034 (C.D.Cal.2008))

Section 2605 (a) of the Real Estate Settlement Procedures Act directs each person who makes a federally related mortgage loan to disclose to each person who applies for the loan, at the time of application for the loan, whether the servicing of the loan may be assigned, sold, or transferred to any other person at any time while the loan is outstanding.

In the instant case, the entire loan transaction was based on a Deed of Trust wherein the Plaintiff was not made aware of the lender's intention to split the Note and the Deed. MERS was made the "nominee beneficiary" in the deed and was unlawfully conferred with limited interest in the Deed. Since MERS, Inc. has had no registration with the California Dept. of Corporations since 2004, this assignment is void and possibly criminal. The nominee beneficiary then assigned their

interests to Deutsche Bank, by appointing them as the 'Indenture Trustee.' The Loan servicer herein, i.e. Select Portfolio Servicing Inc., acted as an agent for the Trustee in collecting the debt. The Plaintiff was never informed about these unlawful assignments, either in the Deed of Trust or anytime afterwards.

This is an unfair and fraudulent business practice that the Defendants have demonstrated.

**2. Defendants have engaged in predatory lending**

"Predatory lending" is a term generally used to characterize a range of abusive and aggressive lending practices, including deception or fraud, charging excessive fees and interest rates, **making loans without regard to a borrower's ability to repay,** or refinancing loans repeatedly over a short period of time to incur additional fees without any economic gain to the borrower. (*American Financial Services Association v. City of Oakland,* **104 P.3d 813, 34 Cal.4th 1239, 23 Cal.Rptr.3d 453 (Cal. 01/31/2005))**

The Court has given a wide interpretation to the aspect of 'predatory lending.' It is hereby respectfully submitted, that this Honorable Court may deem, from the facts stated above and the arguments advanced herein, that this case is one fit and proper to infer that the Defendants' activities would amount to predatory lending and that their fraudulent acts have given them unjust enrichment and have caused great harm and negligent infliction of emotional distress.

1

2   **VI. THE PLAINTIFF HAS SUFFERED INJURY DUE TO THE INTENTIONAL**

3   **INFLICTION OF EMOTIONAL DISTRESS**

4

5   To state a claim for intentional infliction of emotional

6   distress, Plaintiff must allege (1) outrageous conduct by

7   Defendants, (2) Defendants intentionally caused or recklessly

8   disregarded the probability of causing emotional distress, (3)

9   Plaintiff suffered severe or extreme emotional distress, and

10   (4) Defendants' outrageous conduct was the actual and

11   proximate cause of their emotional distress. **(Trerice v. Blue**

12   **Cross of Cal., 209 Cal.App.3d 878, 883, 257 Cal.Rptr. 338**

13   **(1989)**

14

15   Conduct is said to be outrageous if it is "so extreme as to

16   exceed all bounds of that usually tolerated in a civilized

17   society." Id.

18

19   In the instant case, the several acts of the Defendants have

20   jointly inflicted severe emotional distress to the Plaintiff,

21   as a result of which his only dwelling household is itself at

22   stake now. The loan transaction in its entirety turned out to

23   be a sham, whereby the Plaintiff was found to have undergone

24   traumatic events throughout this insidious process. Each of

25   the entities involved in the transaction, having a statutory

26   and legal duty to the Plaintiff, have betrayed him and the

27   law. It is submitted that the aforesaid outrageous conduct of

28

the Defendants are beyond the level of tolerance of the Plaintiff and the public at large.

The Court of Appeals in **Russell v. Massachusetts Mut. Life Ins. Co., 722 F.2d 482 (C.A.9 (Cal.) 1983**, stated that the award of compensatory damages shall "remedy the wrong and make the aggrieved individual whole," which meant not merely contractual damages for loss of plan benefits, but relief "that will compensate the injured party for all losses and injuries sustained as a direct and proximate cause of the breach of fiduciary duty," including "damages for mental or emotional distress."

This Honorable Court may give due considerations to the distress and agony the Plaintiff herein has endured, while adjudicating. Plaintiff has accrued over 4,000 hours of intense study, at his own expense, in order to defend his property. Plaintiff has been injured by Defendants' own knowing and intentional acts.

## VII.  CLAIM FOR INJUNCTIVE RELIEF

A temporary restraining order and permanent injunction is absolutely necessary in the present case to speedily effectuate the rights and status of Plaintiff in relation to the Defendants as well as to delineate the authority of each of the Defendants in their actions taken against the Plaintiff. Any delay in granting the Plaintiff's request for a

temporary restraining order will result in irreparable injury to the Plaintiff. A temporary restraining order is proper when (a) there is a reasonable likelihood of success (b) irreparable injury (c) balance of convenience which is in favor of the Plaintiff (d) the public interest is favorably impacted.

An actual controversy does exist between the Plaintiff and the Defendants both individually as well as collectively. If the Defendants continue to usurp the Plaintiff's rights, it would result in a complete deprivation of the Plaintiff's property. Pending the determination of this controversy by this Honorable Court, additional litigation is inevitable. In the absence thereof, the Plaintiff will be forced to proceed in securing his rights, as opposed to the Defendants meritless action undertaken against the Plaintiff.

It is here forth submitted that denial of the injunctive relief would cause the Plaintiff immediate, and irreparable injury, as he would lose his only residence if it were foreclosed. It has been held by the Court that "a loss of a preliminary residence is irreparable injury." **(Avila v. Stearns Lending Inc., 2008 WL 1378231, at \*3 (C.D. Cal. April 7, 2008))** Since the property at issue is his primary residence, Plaintiff's claim for legal remedy against the defendants i.e., damages would be inadequate without grant of injunction. Plaintiff asserts that his Amended Complaint

therefore meets the equitable criteria for stating a cause of action for injunctive relief.

## PRAYER FOR RELIEF

The following are the reliefs sought for in the instant matter:

1) Defendant should return the 'Genuine Original Promissory Note' or its proceeds and all the money paid by the Plaintiff to the Defendant, with full disclosure of accounting of such, to the Plaintiff forthwith,

2) If the Defendant is not able to return the 'Genuine Original Promissory Note' to the Plaintiff then the Defendant should be deemed to be admitting his unlawful attempt to convert real property without cause and/or right

3) Defendant present to the Plaintiff and to this Court an Affidavit stating that he has no right to the real property in question

4) Defendant return the DEED and other documents pertaining to ownership of the real property in question to the Plaintiff

5) If the Defendant DOES NOT state the claim under penalty of perjury that the Defendant is the Creditor in the instant matter, the Defendants agree to accept the judgment by default in favor of Plaintiff

6) If the Defendant DOES state the claim under penalty of
   perjury that the Defendant is the Creditor in the instant
   matter, the Defendants agree to deliver acknowledgement
   of such forthwith to the S.E.C, the I.R.S. and the State
   of California and County of Placer for restitution of the
   various fees and taxes it has avoided through the
   mechanism of tax exempt status of the mortgage loan trust
   and the treatment of the Notes as debt.

Dated: 3rd day of June, 2010

James L. Macklin,
Pro-se