1

2

3

4

5

6

7

8                             UNITED STATES DISTRICT COURT

9                         FOR THE EASTERN DISTRICT OF CALIFORNIA

10

11   JAMES L. MACKLIN,                          No.  2:10-cv-1097 MCE KJN PS

12                  Plaintiff,

13          v.                                   FINDINGS AND RECOMMENDATIONS

14   MATTHEW HOLLINGSWORTH, et al.,

15                  Defendants.

16

17          On April 15, 2014, plaintiff James L. Macklin ("plaintiff") filed a motion for leave to

18   amend his complaint for a second time and a proposed Second Amended Complaint ("SAC").

19   (ECF Nos. 40, 43.)  On July 1, 2014, the court granted plaintiff's motion for leave to amend and

20   the proposed SAC became the operative complaint in this action.  (ECF No. 42.)  In the SAC,

21   plaintiff alleges that defendants Select Portfolio Servicing, Inc. ("Select Portfolio"), Wells Fargo

22   Bank, N.A. ("Wells Fargo"),[1] Deutsche Bank National Trust Co. ("Deutsche Bank"), and Quality

23   Loan Service Corporation ("Quality Loan") committed breach of contract and violations of

24   several Federal and California statutes governing lending and other business practices in

25   _____

26   [1] Plaintiff erroneously named Wells Fargo Bank, N.A. as Wells Fargo & Co. in the SAC.  Wells
     Fargo Bank, N.A. notified the court of this error in its stipulation with plaintiff filed August 4,
27   2014.  (ECF No. 50.)  Wells Fargo Bank, N.A. indicates that it has accepted service of the SAC
     despite this error.  (See id. at 2.)
28

1

1   connection with the origination, underwriting, servicing, and foreclosure of plaintiff's residential

2   home loan.  (ECF No. 43.)  Presently before the court is defendants Select Portfolio, Deutsche

3   Bank, and Quality Loan's[2] (collectively "defendants") motion to dismiss plaintiff's SAC pursuant

4   to Federal Rule of Civil Procedure 12(b)(6) for failure to state a claim upon which relief can be

5   granted.[3]  (ECF No. 45.)  Plaintiff filed an opposition and defendants filed a reply.  (ECF Nos. 52,

6   56, 59.)

7          The court heard this matter on its August 21, 2014 law and motion calendar.  Plaintiff

8   James Macklin appeared on his own behalf.  Attorney Robert Bleicher appeared on behalf of

9   defendants Deutsche Bank and Select Portfolio.  Attorney Megan Boyd appeared telephonically

10  on behalf of defendant Quality Loan.  Attorney Robert Campbell appeared telephonically on

11  behalf of defendant Wells Fargo.

12         The undersigned has fully considered the parties' briefs, the parties' oral arguments, and

13  appropriate portions of the record.  For the reasons that follow, it is recommended that

14  defendants' motion to dismiss be granted and that defendants Deutsche Bank, Select Portfolio,

15  and Quality Loan be dismissed from this action with prejudice.

16  I.     Parties' Requests for Judicial Notice

17         As an initial matter, the court addresses defendants' and plaintiff's respective requests for

18  the court to take judicial notice of certain documents.  (ECF Nos. 46, 47, 48, 53, 63.)  Pursuant to

19  Federal Rules of Evidence 201, "the court may judicially notice a fact that is not subject to

20  reasonable dispute because it: (1) is generally known within the trial court's territorial

21  jurisdiction; or (2) can be accurately and readily determined from sources whose accuracy cannot

22

23  [2] The present motion to dismiss was initially filed by Select Portfolio and Deutsche Bank.  (ECF
    No. 45.)  Quality Loan subsequently filed notice that it joins Select Portfolio and Deutsche Bank
24  in their motion to dismiss and argues that plaintiff's claims against Quality Loan should be
    dismissed for the same reasons stated in the motion for summary judgment.  (ECF No. 49.)
25  Quality Loan also argues in its notice of joinder additional grounds for dismissal not presented in
    Select Portfolio and Deutsche Bank's motion to dismiss.  (Id. at 2-3.)
26

27  [3] Defendant Wells Fargo does not join in the present motion to dismiss.  On August 18, 2014,
    Wells Fargo filed its own separate motion to dismiss that is currently noticed for a hearing on
28  September 25, 2014.

1    reasonably be questioned."

2           Generally, a court may not consider material beyond the complaint in ruling on a motion

3    to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6).  Lee v. City of Los Angeles, 250

4    F.3d 668, 688 (9th Cir. 2001).  "However, '[a] court may take judicial notice of 'matters of public

5    record' without converting a motion to dismiss into a motion for summary judgment,' as long as

6    the facts noticed are not 'subject to reasonable dispute.'"  Intri-Plex Technologies, Inc. v. Crest

7    Grp., Inc., 499 F.3d 1048, 1052 (9th Cir. 2007) (quoting Lee, 250 F.3d at 689 (citation omitted));

8    see also United States v. Ritchie, 342 F.3d 903, 908-09 (9th Cir. 2003).

9           A.      Defendants' Requests

10          Defendants request that the court take judicial notice of 31 different documents.  (ECF

11   No. 46.)  In particular, defendants request that the court take judicial notice of the following:  (1)

12   the docket in Placer County Superior Court Case No. SCV 26905 (the "Superior

13   Court Action"); (2) the docket in the present action; (3) the docket in United States Bankruptcy

14   Court for the Eastern District of California Case No. 10-44610 (the "Bankruptcy Case"); (4) the

15   docket in United States Bankruptcy Court for the Eastern District of California, Case No. 11-

16   002024 (the "Adversary Proceeding"); (5) the docket in United States District Court for the

17   Eastern District of California, Case No. 2-12-cv-01752-GEB-JFM (the "Withdrawal Case"); (6)

18   the notice of default on plaintiff's loan, recorded in the Placer County Recorder's Office on

19   December 8, 2008; (7) the substitution of trustee document for plaintiff's loan, recorded in the

20   Placer County Recorder's Office on January 30, 2008; (8) the notice of trustee's sale for

21   plaintiff's property, recorded in the Placer County Recorder's Office on November 25, 2009; (9)

22   the assignment of deed of trust document for plaintiff's loan, recorded in the Placer County

23   Recorder's Office on November 26, 2009 (10) the notice of trustee's sale for plaintiff's property,

24   recorded in the Placer County Recorder's Office on November 25, 2009; (11) the trustee's deed

25   upon sale for plaintiff's property, recorded in the Placer County Recorder's Office on December

26   21, 2009; (12) the complaint in the Superior Court Action; (13) the first amended complaint in the

27   Civil Action; (14) the complaint in the Adversary Proceeding; (15) the order for preliminary

28   injunction in the Adversary Proceeding; (16) the first amended complaint in the Adversary

3

Proceeding; (17) the judgment for Deutsche Bank National Trust in the Unlawful Detainer Action; (18) the memorandum of decision granting in part and denying in part Deutsche Bank's motion to dismiss the first amended complaint in the Adversary Proceeding; (19) Deutsche Bank's motion to withdraw the bankruptcy reference, filed in the Withdrawal Case; (20) plaintiff's opposition to the motion to withdraw the bankruptcy reference, filed in the Adversary Proceeding; (21) the order denying the motion to withdrawal the bankruptcy reference in the Withdrawal Case; (22) the appellate opinion affirming trial court's judgment for Deutsche Bank in the Unlawful Detainer Action; (23) the proposed second amended complaint in the Adversary Proceeding; (24) the Order denying plaintiff's motion for leave to amend to file a second amended complaint in the Adversary Proceeding;  (25) the minute order denying plaintiff's motion to file a second amended complaint in the Adversary Proceeding; (26) the memorandum opinion and decision granting summary judgment for Deutsche Bank in the Adversary Proceeding; (27)  the order granting summary judgment for Deutsche Bank in the Adversary Proceeding; (28) the judgment for Deutsche Bank in the Adversary Proceeding; (29) the minute order denying plaintiff's motion to vacate judgment in the Adversary Proceeding; (30) the civil minutes denying plaintiff's motion to vacate judgment in the Adversary Proceeding; and (31) the Ninth Circuit Bankruptcy Appellate Panel order dismissing plaintiff's appeal of judgment in the Adversary Proceeding.  (Id.)

Because defendants' requests for judicial notice for the documents filed in the Bankruptcy Case, the Adversary Proceeding, the Withdrawal Case, and plaintiff's appeal from the Adversary Proceeding involve matters of public record in related judicial proceedings, these requests are granted.  See Biggs v. Terhune, 334 F.3d 910, 916 n.3 (9th Cir. 2003) ("Materials from a proceeding in another tribunal are appropriate for judicial notice."), overruled on other grounds by Hayward v. Marshall, 603 F.3d 546, 555 (9th Cir. 2010); Headwaters Inc. v. United States Forest Serv., 399 F.3d 1047, 1051 n.3 (9th Cir. 2005) (taking judicial notice of the docket in a related case).  Specifically, the court grants defendants' request for judicial notice as to the documents filed as defendants' Exhibits 3, 4, 5, 14, 15, 16, 18, 19, 20, 21, 23, 24, 25, 26, 27, 28 29, 30, and 31 to their request for judicial notice.  (ECF Nos. 46-3, 46-4, 46-5, 46-14, 46-15, 46-

16, 47-2, 47-3, 47-4, 47-5, 47-7, 47-8, 48-1, 48-2, 48-3, 48-4, 48-5, 48-6, 48-7, 48-8.)  The court

takes judicial notice of these documents filed in these earlier actions for the purpose of

recognizing the judicial acts taken and the subject matter of the plaintiff's adversary proceeding

before the Bankruptcy Court.  See Bank v. Magna Bank of Missouri, 894 F. Supp. 1337, 1341

(E.D. Mo. 1995) aff'd, 92 F.3d 743 (8th Cir. 1996) (taking judicial notice of records from prior

related bankruptcy proceeding to recognize the judicial acts taken and the subject matter of that

prior proceeding).  Such facts are not reasonably in dispute by the parties.[4]  However, the court

declines to take judicial notice of any of the requested documents not listed above because the

court finds that judicial notice of those documents is not necessary to decide the present motion to

dismiss.

B.      Plaintiff's Requests

Plaintiff also filed multiple requests for judicial notice.  In his initial filing, plaintiff

requests that the court judicially notice the following five documents: (1) a Brief by the Consumer

Financial Protection Bureau as Amicus Curiae in Support of Plaintiff-Appellant and Reversal

filed in Rosenfield v. HSBC Bank, USA, Case No. 10-1442, in the United States Tenth Circuit

Court of Appeals; (2) the Ninth Circuit Court of Appeals' decision in Merritt v. Countrywide Fin.

Corp., 09-17678, 2014 WL 3451299 (9th Cir. July 16, 2014); (3) a portion of the record for the

Accredited Mortgage Loan Trust Series 2006-2 available on the United States Securities and

Exchange Commission's website; (4) a loan application form plaintiff purports to have used in

conjunction with obtaining his home loan; and (5) a Truth in Lending Disclosure form

purportedly signed by plaintiff during his home loan application process and plaintiff's federal tax

---

[4] Plaintiff filed an opposition to defendants' request for judicial notice.  (ECF No. 51.)  However, many of plaintiff's objections to defendants' requests are centered on California law regarding judicial notice, which is not applicable in federal court.  Furthermore, to the extent that plaintiff objects on the basis of the Federal Rules of Evidence, such arguments are without merit because under Federal Rule of Evidence 201 "[m]aterials from a proceeding in another tribunal are appropriate for judicial notice."  Biggs v. Terhune, 334 F.3d 910, 916 n.3 (9th Cir. 2003);  United States v. Wilson, 631 F.2d 118, 119 (9th Cir. 1980) ("[A federal district] court may take judicial notice of its own records in other cases, as well as the records of an inferior court in other cases.");  Chandler v. United States, 378 F.2d 906, 909 (9th Cir. 1967).  Accordingly, plaintiff's opposition to defendants' request for judicial notice is without merit.

return for the 2005 tax year.  (Id.)  Defendants filed an opposition to all of plaintiff's requests in this filing except for his request for judicial notice of Ninth Circuit Court of Appeals' decision in Merritt.  (ECF No. 57.)  On August 21, 2014, just prior to the hearing on defendants' motion to dismiss, plaintiff also filed a supplemental request for judicial notice requesting that the court take judicial notice of the United States Security and Exchange Commission's record of the "Master Sales and Servicing Agreement" concerning the Accredited Mortgage Loan Trust Series 2006-2. (ECF No. 63.)

Plaintiff asks the court to take judicial notice of documents that are quite different from documents held to be proper subjects for judicial notice by the Ninth Circuit Court of Appeals.  It appears that plaintiff seeks judicial notice of all of the above documents so that he may utilize them in support of the substantive allegations made in his SAC.  "As a general rule, a court may not take judicial notice of proceedings or records in another cause so as to supply, without formal introduction of evidence, facts essential to support a contention in a cause then before it."  M/V Am. Queen v. San Diego Marine Const. Corp., 708 F.2d 1483, 1491 (9th Cir. 1983). Accordingly, the court cannot judicially notice the Amicus Curiae brief filed in Rosenfield. Furthermore, the court declines to take judicial notice of any of the other documents plaintiff requests because none of those documents have any relevance to defendants' motion to dismiss currently before the court.  Accordingly, plaintiff's requests for judicial notice are denied.

II.      Background

A.       Procedural History

On April 2, 2010, plaintiff filed his original complaint in the Placer County Superior Court alleging claims against Deutsche Bank, Select Portfolio, and other defendants regarding the origination, underwriting, and servicing of the mortgage loan on plaintiff's home.  (ECF No. 2-1.) Defendants removed the action to this court on May 3, 2010, on the basis of both diversity and federal question jurisdiction.  (ECF No. 2.)  On June 4, 2010, plaintiff requested leave to amend his complaint and filed a proposed first amended complaint.  (ECF Nos. 12, 13.)  The court subsequently granted plaintiff's motion.  (ECF No. 14.)  The defendants named in the first amended complaint filed an answer on June 24, 2010, and subsequently filed a motion for

1   summary judgment.  (ECF Nos. 15, 16.)

2           On September 16, 2010, plaintiff filed a Chapter 13 bankruptcy petition in the Bankruptcy

3   Court, which was subsequently converted into a proceeding under Chapter 7.  (ECF No. 46-3 at 2,

4   5.)  On October 6, 2010, the court stayed the proceedings in the present action pursuant to 11

5   U.S.C. § 362 in light of plaintiff's pending bankruptcy proceedings.  (ECF No. 25.)  The court

6   further ordered the parties to notify the court within ten days of the resolution of plaintiff's

7   bankruptcy proceedings.  (Id.)

8           On January 13, 2011, plaintiff filed a complaint in an adversary proceeding against

9   Deutsche Bank before the Bankruptcy Court.  (Pl.'s Adversary Compl. (ECF No. 46-14).)  The

10   adversary complaint alleged, among other things, claims against Deutsche Bank for fraudulent

11   conveyance, libel, quiet title, and violations of the Truth in Lending Act ("TILA").  (Id.)

12   Deutsche Bank filed a motion to dismiss the adversary complaint, which was granted with leave

13   to amend by the Bankruptcy Court on May 12, 2011.  (Electronic Docket for Adversary

14   Proceeding (ECF No. 46-4 at 11).)

15           On June 17, 2011, plaintiff filed an amended adversary complaint alleging the following

16   ten claims against Deutsche Bank:  (1) violations of TILA; (2) violations of the Real Estate

17   Settlement Procedures Act ("RESPA"); (3) violations of the Fair Credit Reporting Act ("FCRA");

18   (4) fraud; (5) unjust enrichment; (6) civil RICO violations; (7) violation of California's Unfair

19   Competition Law ("UCL"); (8) breach of a security instrument; (9) wrongful foreclosure; and

20   (10) quiet title.  (Pl.'s Am. Adversary Compl. (ECF No. 46-16).)  Deutsche bank filed a motion to

21   dismiss the amended adversary complaint on August 3, 2011.  (ECF No. 46-4 at 15.)  On

22   February 12, 2012, the Bankruptcy Court granted Deutsche Bank's motion to dismiss in part,

23   dismissing the first eight claims alleged in the amended adversary complaint with prejudice, and

24   denying the motion as to plaintiff's final two claims for wrongful foreclosure and quiet title.

25   (ECF No. 47-2.)  On February 28, 2012, Deutsche Bank filed an answer to the two surviving

26   causes of action.  (ECF No. 46-4 at 22.)

27           On July 2, 2012, through a separate action, Deutsche Bank filed a motion to withdraw the

28   bankruptcy reference so that the adversary proceeding in plaintiff's bankruptcy case could be

1  consolidated with the present action.  (ECF No. 46-5 at 2.)  The district judge presiding over the

2  withdrawal case denied Deutsche Bank's motion primarily on grounds that having the district

3  court become familiar with the facts and law of the claims underlying the adversary proceeding

4  "would duplicate much of what [the bankruptcy court] has already accomplished."  (ECF No. 47-

5  5 at 6-7.)

6      After the denial of Deutsche Bank's motion, the adversary proceeding resumed.  On

7  October 4, 2012, plaintiff filed a motion for leave to amend his adversary complaint for a second

8  time, seeking to again add claims for violations of TILA and California's UCL, in addition to

9  stating his surviving wrongful foreclosure and quiet title claims.  (ECF No. 47-7.)  The

10  Bankruptcy Court denied this motion, stating several reasons why plaintiff's proposed TILA and

11  UCL claims were not cognizable as stated in the proposed second amended adversary complaint.

12  (ECF Nos. 48-1, 48-2.)

13      On February 23, 2013, plaintiff filed a motion for summary judgment as to his surviving

14  wrongful foreclosure and quiet title claims; Deutsche Bank filed a cross-motion for summary

15  judgment on these claims.  (ECF No. 46-4 at 30-31.)  On May 23, 2013, the Bankruptcy Court

16  granted Deutsche Bank's cross-motion for summary judgment and denied plaintiff's motion for

17  summary judgment.  (ECF Nos. 48-3, 48-4.)  Judgment for Deutsche Bank in the adversary

18  proceeding was entered on July 2, 2013.  (ECF No. 48-5.)  Plaintiff filed a motion to vacate the

19  judgment; however, that motion was denied.  (ECF No. 46-4 at 33; ECF No. 48-6; ECF No. 48-

20  7.)  Plaintiff then appealed the judgment.  (ECF No. 46-4 at 35.)  On December 16, 2013, the

21  Ninth Circuit Court of Appeal's Bankruptcy Panel denied plaintiff's appeal for lack of

22  jurisdiction.  (ECF No. 48-8.)

23      On December 23, 2013, defendants filed a notice stating that plaintiff's bankruptcy

24  proceedings had reached a final resolution.  (ECF No. 26.)  As a result, the court lifted the stay on

25  the present action on February 4, 2014.  (ECF No. 29.)  Plaintiff subsequently filed a motion for

26  leave to amend his complaint for a second time along with a proposed second amended

27  complaint.  (ECF Nos. 40, 43.)  On July 1, 2014, the court granted plaintiff's motion and deemed

28  the proposed second amended complaint the operative complaint.  (ECF No. 42.)  Defendants

1   now seek to dismiss the second amended complaint pursuant to Federal Rule of Civil Procedure

2   12(b)(6). (ECF No. 45.)

3           B.       Factual Allegations in the Second Amended Complaint

4           In January of 2006, a family law court in Placer County ordered plaintiff to obtain an

5   evaluation of his home's value for purposes of a marital settlement in plaintiff's pending divorce

6   proceedings.  (SAC (ECF No. 43.) at 3.)  Plaintiff went to the business branch of Wells Fargo

7   Bank in Loomis, California.  (Id.)  While there, plaintiff was advised that he would need to

8   contact Wells Fargo's home mortgage division located in Roseville, California if he wanted to

9   complete the valuation process for his home and apply for a loan to settle the marriage estate.

10  (Id.)  Plaintiff went to the Wells Fargo branch in Roseville, where he met with Christine Medina,

11  a broker for Wells Fargo.  (Id.)  During the loan application process, plaintiff was required to

12  provide Wells Fargo with a number of documents regarding his finances, including his tax returns

13  and bank statements.  (Id.)

14          Medina later gave plaintiff a telephone interview regarding his income, place of residence,

15  job history, and other information.  (Id.)  Medina notified plaintiff over the phone "that he was

16  qualified for a loan that would effectively 'cash out' newly acquired equity as a result of his

17  residence being over-valued" by Wells Fargo.  (Id. at 3-4.)  Medina then asked plaintiff to come

18  to Wells Fargo's Roseville branch to sign the loan papers.  (Id. at 4.)  Plaintiff decided he would

19  refinance his home in order to comply with the family court's order.  (Id.)

20          Plaintiff went to the Wells Fargo in Roseville to fill out the loan paperwork.  (Id.)  When

21  plaintiff arrived, he was placed in a room with a manager of the office and a notary, who was

22  present for plaintiff's signing of the loan documents.  (Id.)  "Plaintiff was never provided with

23  any contracts to review prior to the meeting."  (Id.)  The manager advised plaintiff that the notary

24  had to leave for another signing in Folsom, California within the next hour and that plaintiff

25  needed to immediately sign the documents with the aid of yellow tabs Wells Fargo had pre-

26  attached to the loan documents.  (Id.)  "Plaintiff was then guided through the signing and had

27  completed the signing of all necessary documents within a period of less than 15 minutes."  (Id.)

28  Plaintiff was not given an opportunity to review these documents and was sent home without

1    copies of any of the documents.  (Id.)

2        Later that same week, Wells Fargo called plaintiff and told him to come back to the bank

3    to pick up the loan documents the following week.  (Id.)  The next week, plaintiff returned and

4    picked up a large file full of documents Wells Fargo purported to be the loan contract documents.

5    (Id.)  However, plaintiff later learned that the documents in the folder "were blank and contained

6    only miniscule information."  (Id.)  Wells Fargo told plaintiff that this was a customary practice

7    and that he should not worry because the Bank's policy dictated that the originals were to be

8    placed into the custody of a master document custodian.  (Id.)

9        Plaintiff made every installment payment due under the loan contract until August of

10   2008, when plaintiff noticed that no principal on the loan was being paid down through his

11   payments.  (Id.)  Plaintiff contacted the servicer of his loan to inquire into why this was

12   happening.  (Id.)  The servicer told plaintiff "that the loan was an interest-only loan."  (Id.)

13   However, Wells Fargo's employee, Medina, had told plaintiff "that the loan was a fully

14   amortized, standard performing 'principal and interest' loan."  (Id.)  "Plaintiff was never told that

15   his loan was interest-only" prior to being notified by the loan servicer.  (Id.)

16       "Plaintiff executed a dispute in writing to the loan servicer challenging the validity of the

17   loan."  (Id.)  Plaintiff subsequently attempted to rescind the loan contract by sending a writing to

18   counsel for the loan's beneficiary stating plaintiff's intention to rescind.  (Id. at 4-5.)  Plaintiff

19   received a written reply from the beneficiary's counsel indicating that the loan had not been

20   rescinded.  (Id. at 5.)

21       Plaintiff alleges that he later learned that Wells Fargo had placed false information in

22   plaintiff's loan application documents, including false information regarding plaintiff's income,

23   the amount of time plaintiff had lived in his home, the amount of time plaintiff had been

24   employed, and the actual value of the property, in order to ensure that plaintiff would be qualified

25   for a loan that he otherwise would not have been able to obtain.  (Id. at 7-8.)  Plaintiff further

26   alleges that Deutsche Bank was the purported assignee of the loan contract plaintiff entered into

27   with Wells Fargo and had "ratified the actions" of Wells Fargo.  (Id. at 8.) Plaintiff alleges that

28   Deutsche Bank received payment from Select Portfolio when it executed the Notice of Default on

1    plaintiff's loan.  (<u>Id.</u> at 17-18.)  In addition, plaintiff alleges that "Select [Portfolio] and Quality

2    [Loan] . . . were complicit in the acts [of Wells Fargo] by an agency relationship."  (<u>Id.</u> at 20.)

3    Finally, plaintiff alleges that all defendants illegally "took plaintiff's home by way of non-judicial

4    foreclosure."  <u>Id.</u> at 12.

5            On the basis of these factual allegations, plaintiff asserts the following six claims against

6    all defendants: (1) "illegal contract"; (2) breach of contract; (3) TILA violations; (4) violations of

7    the Equal Credit Opportunity Act ("ECOA"); (5) FCRA violations; and violations of California's

8    UCL.  (<u>Id.</u> at 11-23.)

9    III.    <u>Legal Standard</u>

10           A motion to dismiss brought pursuant to Federal Rule of Civil Procedure 12(b)(6)

11   challenges the sufficiency of the pleadings set forth in the complaint.  <u>Vega v. JPMorgan Chase</u>

12   <u>Bank, N.A.</u>, 654 F. Supp. 2d 1104, 1109 (E.D. Cal. 2009).  Under the "notice pleading" standard

13   of the Federal Rules of Civil Procedure, a plaintiff's complaint must provide, in part, a "short and

14   plain statement" of plaintiff's claims showing entitlement to relief.  Fed. R. Civ. P. 8(a)(2); <u>see</u>

15   <u>also</u> <u>Paulsen v. CNF, Inc.</u>, 559 F.3d 1061, 1071 (9th Cir. 2009).  "To survive a motion to dismiss,

16   a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that

17   is plausible on its face.'"  <u>Ashcroft v. Iqbal</u>, 556 U.S. 662, 678 (2009) (citing <u>Bell Atl. Corp. v.</u>

18   <u>Twombly</u>, 550 U.S. 544, 570 (2007)).  "A claim has facial plausibility when the plaintiff pleads

19   factual content that allows the court to draw the reasonable inference that the defendant is liable

20   for the misconduct alleged."  <u>Id.</u>

21           In considering a motion to dismiss for failure to state a claim, the court accepts all of the

22   facts alleged in the complaint as true and construes them in the light most favorable to the

23   plaintiff.  <u>Corrie v. Caterpillar, Inc.</u>, 503 F.3d 974, 977 (9th Cir. 2007).  The court is "not,

24   however, required to accept as true conclusory allegations that are contradicted by documents

25   referred to in the complaint, and [the court does] not necessarily assume the truth of legal

26   conclusions merely because they are cast in the form of factual allegations."  <u>Paulsen</u>, 559 F.3d at

27   1071.  The court must construe a pro se pleading liberally to determine if it states a claim and,

28   prior to dismissal, tell a plaintiff of deficiencies in his complaint and give plaintiff an opportunity

1    to cure them if it appears at all possible that the plaintiff can correct the defect.  See Lopez v.

2    Smith, 203 F.3d 1122, 1130-31 (9th Cir. 2000) (en banc); accord Balistreri v. Pacifica Police

3    Dep't, 901 F.2d 696, 699 (9th Cir. 1990) (stating that "pro se pleadings are liberally construed,

4    particularly where civil rights claims are involved"); see also Hebbe v. Pliler, 627 F.3d 338, 342

5    & n.7 (9th Cir. 2010) (stating that courts continue to construe pro se filings liberally even when

6    evaluating them under the standard announced in Iqbal).

7         In ruling on a motion to dismiss filed pursuant to Rule 12(b)(6), the court "may generally

8    consider only allegations contained in the pleadings, exhibits attached to the complaint, and

9    matters properly subject to judicial notice."  Outdoor Media Group, Inc. v. City of Beaumont, 506

10   F.3d 895, 899 (9th Cir. 2007) (citation and quotation marks omitted).  Although the court may not

11   consider a memorandum in opposition to a defendant's motion to dismiss to determine the

12   propriety of a Rule 12(b)(6) motion, see Schneider v. Cal. Dep't of Corrections, 151 F.3d 1194,

13   1197 n.1 (9th Cir. 1998), it may consider allegations raised in opposition papers in deciding

14   whether to grant leave to amend, see, e.g., Broam v. Bogan, 320 F.3d 1023, 1026 n.2 (9th Cir.

15   2003).

16   IV.    Defendants' Motion to Dismiss

17        Defendants argue that plaintiff's claims alleged against them in the second amended

18   complaint should be dismissed with prejudice under the doctrine of claim preclusion because such

19   claims were either adjudicated by the Bankruptcy Court during the adversary proceeding or could

20   have been asserted by plaintiff during the adversary proceeding.

21        Claim preclusion "bars litigation in a subsequent action of any claims that were raised or

22   could have been raised in the prior action." Owens v. Kaiser Foundation Health Plan, Inc., 244

23   F.3d 708, 713 (9th Cir. 2001) (quoting Western Radio Servs. Co. v. Glickman, 123 F.3d 1189,

24   1192 (9th Cir. 1997)) (internal quotation marks omitted). When federal-court jurisdiction is based

25   on the presence of a federal question, federal preclusion doctrine applies. See Taylor v. Sturgell,

26   553 U.S. 880, 891 (2008); see also Heiser v. Woodruff, 327 U.S. 726, 733 (1946).  However,

27   "[f]or judgments in diversity cases, federal law incorporates the rules of preclusion applied by the

28   State in which the rendering court sits." Taylor v. Sturgell, 553 U.S. 880, 891 (2008) (citing

Semtek Int'l Inc. v. Lockheed Martin Corp., 531 U.S. 497, 508 (2001)).  Nevertheless, under

California law, a court must apply federal preclusion rules when determining the preclusive effect

of a prior federal court judgment. [5]  Younger v. Jensen, 26 Cal.3d 397, 411 (1980).  Accordingly,

under federal law, "[T]he doctrine [of claim preclusion] is applicable whenever there is (1) an

identity of claims, (2) a final judgment on the merits, and (3) identity or privity between parties."

Owens, 244 F.3d at 713.

A.   Identity of Claims

The Ninth Circuit Court of Appeals has identified four factors that should be

considered by a court in determining whether successive lawsuits involve an identity of claims:

> (1) whether rights or interests established in the prior judgment would be destroyed or impaired by prosecution of the second action;
>
> (2) whether substantially the same evidence is presented in the two actions;
>
> (3) whether the two suits involve infringement of the same right; and
>
> (4) whether the two suits arise out of the same transactional nucleus of facts.

See C.D. Anderson & Co. v. Lemos, 832 F.2d 1097, 1100 (9th Cir. 1987); accord Headwaters

Inc. v. United States Forest Serv., 399 F.3d 1047, 1052 (9th Cir. 2005); Littlejohn v. United

States, 321 F.3d 915, 920 (9th Cir. 2003).  "The central criterion in determining whether there is

an identity of claims between the first and second adjudications is whether the two suits arise out

of the same transactional nucleus of facts."  Owens, 244 F.3d at 714.

In most cases, "the inquiry into the 'same transactional nucleus of facts' is essentially the

same as whether the claim could have been brought in the first action."  United States v.

Liquidators of European Fed. Credit Bank, 630 F.3d 1139, 1151 (9th Cir. 2011).  "A plaintiff

need not bring every possible claim.  But where claims arise from the same factual circumstances,

---

[5] Defendants removed this case from state court on the basis of both federal question and diversity of citizenship jurisdiction.  (See ECF No. 1.)  For purposes of defendants' present motion, federal preclusion rules apply under either basis for subject matter jurisdiction.

1   a plaintiff must bring all related claims together or forfeit the opportunity to bring any omitted

2   claim in a subsequent proceeding."  Turtle Island Restoration Network v. U.S. Dep't of State, 673

3   F.3d 914, 918 (9th Cir. 2012).  "Newly articulated claims based on the same nucleus of facts may

4   still be subject to a [claim preclusion] finding if the claims could have been brought in the earlier

5   action."  Tahoe-Sierra Pres. Council, Inc. v. Tahoe Reg'l Planning Agency, 322 F.3d 1064, 1078

6   (9th Cir. 2003); United States ex rel. Barajas v. Northrop Corp., 147 F.3d 905, 909 (9th Cir.

7   1998) ("It is immaterial whether the claims asserted subsequent to the judgment were actually

8   pursued in the action that led to the judgment; rather, the relevant inquiry is whether they could

9   have been brought.").  "The fact that res judicata depends on an 'identity of claims' does not

10   mean that an imaginative attorney may avoid preclusion by attaching a different legal label to an

11   issue that has, or could have, been litigated."  Tahoe-Sierra Pres. Council, Inc., 322 F.3d at 1077-

12   78.

13         Here, an identity of claims exists between the SAC in the present case and plaintiff's

14   complaint in the Bankruptcy adversary proceeding.  In the present action, plaintiff essentially

15   seeks relief from the same alleged wrongs he unsuccessfully protested in the adversary

16   proceeding.  In his adversary complaint, the transactional nucleus of facts surrounding plaintiff's

17   claims related to the refinancing of his residential mortgage with Wells Fargo in 2006, the terms

18   of his residential loan, the servicing of his residential loan, plaintiff's attempt at rescission of that

19   loan, and the nonjudicial foreclosure resulting from plaintiff's non-payment of that loan.  (See

20   ECF No. 46-16.)  Similarly, here, the crux of plaintiff's claims in the SAC revolve around the

21   exact same series of events surrounding the origination, service of, and foreclosure on the

22   refinance loan plaintiff took out with Wells Fargo in 2006.

23         Furthermore, several of plaintiff's claims in the SAC assert the exact same legal theories

24   based on the same conduct plaintiff alleged in the adversary proceeding.  For example, plaintiff

25   asserted in his first amended adversary complaint a claim under TILA based on allegations that

26   Deutsche Bank or its agents falsified plaintiff's loan application and failed to respond to

27   plaintiff's notice of rescission.  (See ECF No. 46-16 at 25; ECF No. 47-2 at 18.)  Plaintiff now

28   seeks to assert a TILA claim against defendants on the basis of the same allegations.  Similarly,

1    plaintiff asserted claims in the adversary proceeding under the FCRA and California's Unfair

2    Competition Law and has again asserted those claims in the SAC based on the same conduct that

3    was alleged in plaintiff's adversary complaint.  In addition, to the extent that plaintiff asserts

4    claims in the SAC that were not alleged during the adversary proceeding, these claims are simply

5    new legal theories arising from the same transactional nucleus of facts and could have been raised

6    in the prior action.  See Owens, 244 F.3d at 713-14; C.D. Anderson & Co., 832 F.2d at 1100.

7    Accordingly, there exists an identity of claims between the present action and plaintiff's prior

8    adversary proceeding before the Bankruptcy Court.

9           B.    Final Judgment on the Merits

10          Here, the Bankruptcy Court granted Deutsche Bank's motion to dismiss in part and

11   dismissed the majority of plaintiff's claims with prejudice.  (ECF No. 47-2.)  Later, the

12   Bankruptcy Court granted summary judgment for Deutsche Bank with regard to plaintiff's

13   remaining claims and entered a final judgment in Deutsche Bank's favor.  (ECF No. 48-3; ECF

14   No. 48-4; ECF No. 48-5.)  Accordingly, the adversary proceeding ended in a final judgment on

15   the merits.  Mpoyo v. Litton Electro-Optical Sys., 430 F.3d 985, 988 (9th Cir. 2005) ("The second

16   res judicata element is satisfied by a summary judgment dismissal which is considered a decision

17   on the merits for res judicata purposes."); Hells Cyn. Preserv. Council v. U.S. Forest Serv., 403

18   F.3d 683, 686 (9th Cir. 2005) ("'[F]inal judgment on the merits' is synonymous with 'dismissal

19   with prejudice.'").

20          Plaintiff argues in his opposition that the Bankruptcy Court's judgment in his adversary

21   proceeding cannot be given preclusive effect because final judgment was entered by a United

22   States Bankruptcy Judge, an "Article I" judge, not a United States District Court Judge.  (ECF

23   No. 52 at 2-3.)  Plaintiff asserts that the Bankruptcy Judge's entry of a final judgment in

24   plaintiff's adversary proceeding was unconstitutional under the United States Supreme Court's

25   rulings in Stern v. Marshall, 131 S. Ct. 2594 (2011), and Northern Pipeline Const. Co. v.

26   Marathon Pipe Line Co., 458 U.S. 50 (1982), therefore invalidating the judgment entered in the

27   Bankruptcy Court in Deutsche Bank's favor.  (Id.)  However, plaintiff's reliance on these two

28   decisions is misplaced because subsequent decisions issued by the United States Supreme Court

and the Ninth Circuit Court of Appeals have further clarified the holding in <u>Stern</u> and show that

the Bankruptcy Court properly entered final judgment in plaintiff's adversary proceeding against

Deutsche Bank.

Except as otherwise provided by Congress, the district court has "original and exclusive

jurisdiction of all cases under Title 11 . . . [and] original but not exclusive jurisdiction of all civil

proceedings arising under title 11, or arising in or related to cases under title 11." 28 U.S.C. §

1334(a) & (b); <u>Stern</u>, 131 S. Ct. at 2603.[6]  Under the current statutory framework, established by

the Bankruptcy Amendments and Federal Judgeship Act of 1984 (the "1984 Act"), Congress has

empowered the district court to refer any such cases and proceedings to bankruptcy judges.  <u>See</u>

28 U.S.C. § 157(a).  In particular, Congress has empowered the Bankruptcy Courts to "hear and

determine all cases under title 11 and all core proceedings arising under title 11, or arising in a

case under title 11," and to "enter appropriate orders and judgments," subject to appellate review

in the district court. 28 U.S.C. § 157(b)(1); 158(c)(2) (appeals).  The Ninth Circuit Court of

Appeals has described the Bankruptcy Court's statutory authority as follows:

> What the bankruptcy court may do with a given referred proceeding depends on
> whether the proceeding is denominated a "core" or a "non-core" proceeding. In all
> "core proceedings arising under title 11, or arising in a case under title 11," a
> bankruptcy judge has the power to "hear and determine the controversy" and enter
> final orders, subject only to appellate review. [28 U.S.C.] § 157(b)(1).  In a non-
> core proceeding "that is otherwise related to a case under title 11," however, a
> bankruptcy judge may only "submit proposed findings of fact and conclusions of
> law to the district court."  <u>Id.</u> § 157(c)(1).  The entry of final judgment in non-core
> proceedings is the sole province of Article III judges.

<u>In re Bellingham Ins. Agency, Inc.</u>, 702 F.3d 553, 558 (9th Cir. 2012), <u>cert. granted</u>, 133 S. Ct.

2880, and <u>aff'd sub nom.</u> <u>Executive Benefits Ins. Agency v. Arkison</u>, 134 S. Ct. 2165 (2014).

---

[6] Cases under Title 11 are proceedings that are initiated by the filing of a petition in bankruptcy.
<u>See</u> 11 U.S.C. § 101(42) (bankruptcy petition "commenc[es] a case under this title"). Civil
proceedings that "aris[e] under title 11, or aris[e] in ... cases under title 11" are "core
proceedings." <u>Stern</u>, 1431 S. Ct. at 2605 ("core proceedings are those that arise in a bankruptcy
case or under Title 11"); <u>Montana v. Goldin</u> (In re Pegasus Gold Corp.), 394 F.3d 1189, 1193 (9th
Cir. 2005) ("[p]roceedings 'arising in' bankruptcy cases are generally referred to as 'core'
proceedings, and essentially are proceedings that would not exist outside of bankruptcy") (citing
28 U.S.C. § 157(b)(2)).

16

1    While the Bankruptcy Court generally cannot enter final judgment in non-core proceedings, the

2    statutory framework provides an exception allowing the entry of final judgment in non-core

3    proceedings "with the consent of all the parties." 28 U.S.C. § 157(c)(2).  However,

4    notwithstanding Congress's grant of authority to the Bankruptcy Courts, constitutional and

5    statutory impediments must be overcome before a bankruptcy court can adjudicate a given claim.

6        In Northern Pipeline Const. Co., the United States Supreme Court reviewed whether

7    bankruptcy judges under a statutory scheme prior to the 1984 Act "could 'constitutionally be

8    vested with jurisdiction to decide [a] state-law contract claim' against an entity not otherwise a

9    party to the proceeding."  Executive Benefits Ins. Agency, 134 S. Ct. at 2171 (quoting Northern

10   Pipeline Const. Co., 458 U.S. 50, and discussing the issue presented in that case).  The Court held

11   that Congress's grant of power to the Bankruptcy Courts to issue a final resolution on such a

12   claim violated Article III of the Constitution because it "impermissibly removed most, if not all,

13   of 'the essential attributes of the judicial power' from the Art. III district court, and has vested

14   those attributes in a non-Art. III adjunct."  Northern Pipeline Const. Co., 458 U.S. at 87.

15   Following the Supreme Court's ruling in Northern Pipeline Const. Co., Congress enacted the

16   1984 Act, which provides the current statutory scheme under which the Bankruptcy Courts

17   operate.  See In re Bellingham Ins. Agency, Inc., 702 F.3d at 559 (discussing the amendments

18   made by Congress in the 1984 Act).

19       In Stern v. Marshall, the United States Supreme Court addressed an underlying conflict

20   between Congress's amended statutory framework created by the 1984 Act and the requirements

21   of Article III.  The bankrupt in Stern had filed a common-law counterclaim for tortious

22   interference against a creditor to the estate, a claim that was expressly deemed a "core"

23   proceeding under 28 U.S.C. § 157(b)(2)(C), thereby authorizing the bankruptcy court to

24   adjudicate the claim to final judgment.  131 S. Ct. at 2604.  The respondent in that case asserted

25   that Congress had violated Article III by vesting the power to adjudicate such a claim in

26   bankruptcy court.  Id. at 2601.  The Supreme Court agreed, holding that "Congress had

27   improperly vested the Bankruptcy Court with the "'judicial Power of the United States'" when it

28   gave the Bankruptcy Court the statutory authority to enter final judgment on such a claim.

1    Executive Benefits Ins. Agency v. Arkison, 134 S. Ct. 2165, 2172 (2014) (discussing the Court's

2    holding in Stern).  Ultimately, "Stern made clear that some claims labeled by Congress as 'core'

3    may not be adjudicated by a bankruptcy court in the manner designated by § 157(b)."  Id.

4    However, as subsequently noted by the Supreme Court, "Stern did not . . . address how the

5    bankruptcy court should proceed under those circumstances."  Id.

6         In the time since Stern was decided, the Ninth Circuit Court of Appeals has addressed the

7    very issue of how a bankruptcy court should proceed when faced with such circumstances.  In In

8    re Bellingham Ins. Agency, Inc., 702 F.3d 553, 568 (9th Cir. 2012), the bankruptcy trustee

9    initiated an adversary proceeding against Executive Benefits Insurance Agency ("EBIA") and

10   other defendants, alleging, among other things, a fraudulent conveyance claim, a "core" claim

11   under § 157(b).  702 F.3d at 557.  The bankruptcy court ultimately granted summary judgment in

12   favor of the bankruptcy trustee and entered a final judgment.  Id.  EBIA appealed the decision to

13   the district court, which reviewed the summary judgment decision de novo and affirmed.  Id.

14   EBIA then appealed to the Ninth Circuit Court of Appeals, arguing that the bankruptcy judge was

15   constitutionally proscribed from entering final judgment on the trustee's claims under the United

16   States Supreme Court's ruling in Stern.  Id.

17        Denying EBIA's appeal, the Ninth Circuit Court of Appeals determined that while Stern

18   has made it clear that bankruptcy courts do not have the general authority to enter final judgments

19   on fraudulent conveyance claims asserted against noncreditors to the bankruptcy estate, there are

20   two independent sets of circumstances under which a final judgment by a bankruptcy court on

21   "core" claims subject to the Stern ruling may still be upheld.  First, the court held that, pursuant to

22   28 U.S.C. § 157(c)(2), bankruptcy courts may enter final judgments on such claims "with the

23   consent of all the parties to the proceeding," or the implied consent of the parties through their

24   failure to timely object to the bankruptcy court's authority to enter final judgment.  In re

25   Bellingham Ins. Agency, Inc., 702 F.3d at 566-70. [7]  In coming to this first holding, the court

26   reasoned that "[i]f consent permits a non-Article III judge to decide finally a non-core proceeding

27   _____

28   [7] The court also noted that 28 U.S.C. § 157(c)(2) also permits a bankruptcy court to enter a final
     judgment on a non-core claim upon consent of all parties.  Id.

1   [pursuant to 28 U.S.C. § 157(c)(2), then it surely permits the same judge to decide a core

2   proceeding in which he would, absent consent, be disentitled to enter final judgment." Id. at 567.

3   Second, the court held that, even in the absence of consent to the bankruptcy judge's jurisdiction,

4   the district court may still review the bankruptcy court's entry of judgment de novo, treating it as

5   proposed findings of fact and conclusions of law, thus curing the constitutional defect identified

6   in Stern. Id. at 565-66.

7       After the Ninth Circuit Court of Appeal's decision, EBIA sought review in the United

8   States Supreme Court. The Supreme Court granted certiorari for the case to be heard during the

9   Court's most recent term and issued a unanimous decision upholding the Ninth Circuit's ruling.

10  Executive Benefits Ins. Agency v. Arkison, 134 S. Ct. 2165 (2014). In affirming the decision, the

11  Supreme Court elected to resolve the case solely on the basis that the district court had conducted

12  de novo review of the bankruptcy court's judgment. Id. at 2174. In particular, the Court stated:

13          We hold today that when, under Stern's reasoning, the Constitution does not
14          permit a bankruptcy court to enter final judgment on a bankruptcy-related claim,
            the relevant statute nevertheless permits a bankruptcy court to issue proposed
15          findings of fact and conclusions of law to be reviewed de novo by the district
            court. Because the District Court in this case conducted the de novo review that
16          petitioner demands, we affirm the judgment of the Court of Appeals upholding the
            District Court's decision.
17

18  Id. at 2168. The Supreme Court reserved the issue of "whether Article III permits a bankruptcy

19  court, with the consent of the parties, to enter final judgment on a Stern claim . . . for another

20  day." Id. at 2170, n.4. Because the Supreme Court declined to address this aspect of the Court of

21  Appeals' ruling, the Court of Appeals' holding that bankruptcy courts may enter final judgments

22  on Stern claims with the consent of all the parties to the proceeding was left undisturbed.[8]

23  ////

24  _____

25  [8] The court notes that the United States Supreme Court has recently granted certiorari in another
    case for its upcoming term to address the very issue of whether Article III permits a bankruptcy
26  court to enter a final judgment on the basis of party consent. See Wellness Int'l Network Ltd. v.
    Sharif, 272 F.3d 751 (7th Cir. 2013), cert. granted __ U.S.L.W. __ (U.S. July 1, 2014) (No. 13-
27  9355). Nevertheless, at this time, the court is bound to follow current precedent, i.e. the Ninth
    Circuit Court of Appeals' ruling in In re Bellingham Ins. Agency, Inc., in addressing this issue.

28

1     The Ninth Circuit Court of Appeals' decision in In re Bellingham Ins. Agency, Inc. makes

2  it clear that, contrary to plaintiff's argument, the reasoning in Stern did not invalidate the

3  Bankruptcy Court's issuance of a final judgment in plaintiff's adversary proceeding.  As an initial

4  matter, the court notes that the Bankruptcy Court entered judgment in favor of Deutsche Bank

5  without specifying in its orders whether it was acting pursuant to § 157(b) (core) or § 157(c)(2)

6  (non-core with consent).  Nevertheless, whether plaintiff's claims adjudicated in the adversary

7  proceeding were "core" claims, "core" claims subject to the limitations imposed by the reasoning

8  in Stern, or "non-core" claims is of no consequence here because plaintiff consented to the

9  bankruptcy court's jurisdiction to issue a final judgment.  In the judicially noticed first amended

10  adversary complaint, the operative complaint at the time the Bankruptcy Court entered judgment

11  against plaintiff, plaintiff stated the following:

12         This adversary proceeding is a core proceeding as defined at 28 U.S.C. §
        157(b)(2)(b) and (b)(2)(K) in that it is an action to determine the nature, extent and
13         validity of a lien on property evidence by a deed of trust, and the allowance or
        disallowance of a claim.  To the extent that this proceeding is determined to be a
14         non-core proceeding, Plaintiff consents to the entry of final orders or judgment by
        the bankruptcy court.
15

16  (ECF No. 46-16 at 3.)  Under the Ninth Circuit Court of Appeals' current precedent, such express

17  consent was sufficient to confer jurisdiction upon the Bankruptcy Court to issue a final judgment

18  as to plaintiff's claims asserted during the adversary proceeding, be they core claims, Stern

19  claims, or non-core claims.[9]  Furthermore, insofar as plaintiff's claims were core claims not

20  subject to the reasoning in Stern, the Bankruptcy Court had jurisdiction to enter final judgment

21  even without the consent of the parties.  28 U.S.C. § 157(b)(1); see Executive Benefits Ins.

22  _____

23  [9] Furthermore, plaintiff impliedly consented to the Bankruptcy Court's entry of final judgment
  because plaintiff remained silent about his objection under Stern regarding the entry of final
24  judgment by the Bankruptcy Court until after his bankruptcy proceedings had concluded.  Under
  the current Ninth Circuit precedent, implied consent through such silence is sufficient to grant a
25  bankruptcy court the authority to issue final rulings in "non-core" claims and "Stern" claims.  See
  In re Bellingham Ins. Agency, Inc., 702 F.3d at 568 ("Because EBIA waited so long to object,
26  and in light of its litigation tactics, we have little difficulty concluding that EBIA impliedly
  consented to the bankruptcy court's jurisdiction."); Mann v. Alexander Dawson Inc. (In re Mann),
27  907 F.2d 923, 926 (9th Cir. 1990) (holding that a debtor's decision to file an adversary
  proceeding in bankruptcy court, and his failure to object to the court's jurisdiction prior to the
28  time it rendered judgment against him, meant that "he consented to the court's jurisdiction.").

1   Agency, 134 S. Ct. at 2171.  Accordingly, because the Bankruptcy Court had the authority to

2   issue a final ruling in plaintiff's adversary proceeding, its grant of summary judgment in Deutsche

3   Bank's favor in that case constitutes a final judgment for purposes of claim preclusion.

4           C.     Identity or Privity Between Parties

5          The third requirement for the doctrine of claim preclusion is privity of parties.  "Privity . . .

6   is a legal conclusion designating a person so identified in interest with a party to former litigation

7   that he represents precisely the same right in respect to the subject matter involved."  Headwaters

8   Inc. v. U.S. Forest Serv., 399 F.3d 1047, 1052-53 (9th Cir. 2005) (internal quotations and

9   citations omitted).  Privity is obviously present when a party to the present action was also a party

10   in the previous case.  See Tahoe-Sierra Pres. Council, Inc. v. Tahoe Reg'l Planning Agency, 322

11   F.3d 1064, 1081 (9th Cir. 2003).  However, privity is not limited to those who were parties to

12   both actions.  "Even when the parties are not identical, privity may exist if 'there is 'substantial

13   identity' between parties, that is, when there is sufficient commonality of interest.'"  Id. (quoting

14   In re Gottheiner, 703 F.2d 1136, 1140 (9th Cir. 1983)).  "[P]rivity is a flexible concept dependent

15   on the particular relationship between the parties in each individual set of cases."  Tahoe-Sierra

16   Pres. Council, Inc., 322 F.3d at 1081.  Generally, "federal courts will bind a non-party whose

17   interests were represented adequately by a party in the original suit."  In re Schimmels, 127 F.3d

18   875, 881 (9th Cir. 1997).  "In addition, 'privity' has been found where there is a 'substantial

19   identity' between the party and nonparty, . . . and where the interests of the nonparty and party

20   are 'so closely aligned as to be 'virtually representative.'"  Id. (internal citations omitted).

21           1.     Deutsche Bank

22          There is no doubt that there is an identity of parties with respect to Deutsche Bank.

23   Deutsche Bank was named as the sole defendant in the previous adversary proceeding.  Plaintiff

24   now names Deutsche Bank as a defendant to the present action and asserts claims against it that

25   were adjudicated, or could have been adjudicated, by the Bankruptcy Court in the adversary

26   proceeding.  Accordingly, all of plaintiff's claims in the present action against Deutsche Bank are

27   precluded by the prior bankruptcy action.

28   ////

1

2.      <u>Select Portfolio and Quality Loan</u>

2

Select Portfolio argues that even though it was not a party to the adversary proceeding, the

3

allegations in plaintiff's SAC show that there is privity between it and Deutsche Bank because

4

they "confirm that the requisite close relationship and substantial identity exists between

5

[Deutsche Bank] and [Select Portfolio] for res judicata purposes." (ECF No. 45-1 at 23.) Quality

6

Loan states in its notice of joinder that it joins Select Portfolio in this argument. (ECF No. 49 at

7

2.) The court agrees that privity is present between Deutsche Bank and these two defendants.

8

In the SAC, plaintiff alleges that Deutsche Bank was the trustee and assignee of the

9

beneficial interest in his home loan, that Select Portfolio was the servicer of his loan, that an

10

agency relationship existed between these two parties, and that they worked in concert to illegally

11

foreclose on his loan. (ECF No. 43 at 2, 6, 8, 12-13, 16, 20.) The allegations in the SAC

12

regarding Select Portfolio's role in the foreclosure on plaintiff's loan are derivative of the

13

arguments that Deutsche Bank did not have authority —in light of the alleged fact that the

14

Deutsche Bank could not assume ownership over plaintiff's loan because the loan had been

15

originated under false pretenses —to direct Select Portfolio to proceed with the foreclosure.

16

Furthermore, Select Portfolio is alleged to be an agent of Deutsche Bank and was allegedly acting

17

on Deutsche Bank's behalf when it engaged in its loan servicing and foreclosure activities. The

18

alleged existence of an agency relationship is sufficient to show privity between these two

19

defendants for purposes of claim preclusion. <u>Adams v. Cal. Dep't of Health Servs.</u>, 487 F.3d 684,

20

691-92 (9th Cir. 2007) (agents and employees in sufficient privity to invoke claim preclusion);

21

<u>see also</u> <u>Solomon v. E-Loan, Inc.</u>, 2011 WL 1253840, at *5 (E.D. Cal. Mar. 30, 2011).

22

Accordingly, the court concludes Select Portfolio was so "identified in interest" with Deutsche

23

Bank in the prior lawsuit, that privity exists between them for purposes of claim preclusion.

24

Similarly, the allegations in the SAC show that Quality Loan was also in privity with

25

Deutsche Bank. The only allegations in the SAC regarding Quality Loan are that it "acted in

26

concert with Defendant [Deutsche Bank]as an agent to falsely make a declaration of a default

27

where none existed" and that the "Notice of Default was executed by Defendant Quality [Loan] at

28

the request of Defendant Select [Portfolio]." (ECF No. 43 at 12, 17.) The alleged fact that

1   Quality Loan acted as an agent on behalf of Deutsche Bank when engaging in the activities

2   alleged in the SAC shows that the two are in privity.  See Adams, 487 F.3d at 691-92.

3   Accordingly, there is also privity between Deutsche Bank and Select Portfolio that satisfies the

4   final element of the claim preclusion doctrine.

5          Based on the foregoing, the court concludes that the doctrine of claim preclusion applies

6   to plaintiff's present lawsuit against defendants Deutsche Bank, Select Portfolio, and Quality

7   Loan.  Accordingly, this action should be dismissed with prejudice as to these defendants.

8   V.      Conclusion

9          Based on the foregoing, IT IS HEREBY RECOMMENDED that:

10         1.  Defendants Select Portfolio Servicing, Inc., Deutsche Bank National Trust Co., and

11  Quality Loan Service Corporation's motion to dismiss the second amended complaint (ECF Nos.

12  45, 49) be GRANTED; and

13         2.  Defendants Select Portfolio Servicing, Inc., Deutsche Bank National Trust Co., and

14  Quality Loan Service Corporation be dismissed from this action with prejudice.

15         These findings and recommendations are submitted to the United States District Judge

16  assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(l).  Within fourteen (14)

17  days after being served with these findings and recommendations, any party may file written

18  objections with the court and serve a copy on all parties.  Such a document should be captioned

19  "Objections to Magistrate Judge's Findings and Recommendations."  Any reply to the objections

20  shall be served on all parties and filed with the court within fourteen (14) days after service of the

21  objections.  The parties are advised that failure to file objections within the specified time may

22  waive the right to appeal the District Court's order.  Turner v. Duncan, 158 F.3d 449, 455 (9th

23  Cir. 1998); Martinez v. Ylst, 951 F.2d 1153, 1156-57 (9th Cir. 1991).

24         IT IS SO RECOMMENDED.

25  Dated:  September 8, 2014

26                                                          KENDALL J. NEWMAN
                                                           UNITED STATES MAGISTRATE JUDGE

27

28

                                                   23