UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| JAMES L. MACKLIN, | No. 2:10-cv-01097-MCE-KJN |
| Plaintiff, | |
| v. | **MEMORANDUM AND ORDER** |
| MATTHEW HOLLINGSWORTH, et al., | |
| Defendants. | |

In the operative Second Amended Complaint ("SAC") in this action, Plaintiff alleges that Defendants Deutsche Bank National Trust ("Deutsche Bank"), Select Portfolio Servicing, Inc. ("Select Portfolio"), Quality Loan Service Corporation ("Quality Loan"), and Wells Fargo Bank, N.A. ("Wells Fargo")[1] are liable for breach of contract, and also violated several Federal and California statutes governing lending and other business practices in connection with the origination, underwriting, servicing, and foreclosure of Plaintiff's residential home loan. ECF No. 43. Three of the named defendants—Deutsche Bank, Select Portfolio, and Quality Loan—filed a Motion to Dismiss before the assigned Magistrate Judge on July 21, 2014. ECF 45. The Magistrate Judge issued his Findings and Recommendations on Deutsche Bank, Select

---

[1] Plaintiff erroneously named Wells Fargo Bank, N.A. as Wells Fargo & Co. in the SAC. Wells Fargo Bank, N.A. notified the Court of this error in its stipulation with Plaintiff filed August 4, 2014. ECF No. 50.

1

Portfolio, and Quality Loan's Motion to Dismiss on September 8, 2014, recommending that the Motion be granted under the doctrine of claim preclusion.  ECF No. 65.  On December 29, 2014, this Court adopted, in full, the Findings and Recommendations on Deutsche Bank, Select Portfolio, and Quality Loan's Motion to Dismiss.  ECF No. 86.

Presently before the Court is Wells Fargo's Motions to Dismiss filed on August 18, 2014, which is also based on claim preclusion.  ECF No. 62.[2]  Before the assigned Magistrate Judge could issue findings and recommendations on Wells Fargo's Motion, Plaintiff, who had previously been proceeding pro se, obtained counsel and the case was referred to this Court by the Magistrate Judge under Local Rule 302(c)(21).  ECF Nos. 71, 73, 74.

For the reasons discussed below, Wells Fargo's Motion to Dismiss is GRANTED.

## BACKGROUND[3]

### A.  Procedural History

On April 2, 2010, Plaintiff filed his original complaint in the Placer County Superior Court alleging claims against Deutsche Bank, Select Portfolio, and other defendants regarding the origination, underwriting, and servicing of a loan to refinance the mortgage on Plaintiff's home.  ECF No. 2-1.  Defendants removed the action to this Court on May 3, 2010, on the basis of both diversity and federal question jurisdiction.  ECF No. 2. Defendants filed a motion for summary judgment on August, 20 2010.  ECF Nos. 15, 16. On September 16, 2010, Plaintiff filed for bankruptcy.  ECF No. 46-3.  The Court stayed the proceedings in the civil case in light of Plaintiff's pending bankruptcy proceedings. ECF No. 25.

---

[2] Because oral argument would not be of material assistance, the Court ordered this matter submitted on the briefs.  E.D. Cal. Local R. 230(g); ECF No. 85.

[3] Because the parties are familiar with the background of this case, this section only recites a general overview of the facts as taken from the Magistrate Judge's Findings and Recommendations from September 8, 2014.  Additional facts may be found in the Findings and Recommendations, ECF 65.

2

On January 13, 2011, Plaintiff filed a complaint in an adversary proceeding against Deutsche Bank before the Bankruptcy Court. Adversary Compl., ECF No. 46-14. Deutsche Bank filed a motion to dismiss the adversary complaint, which was granted with leave to amend by the Bankruptcy Court on May 12, 2011. Electronic Docket for Adversary Proceeding, ECF No. 46-4 at 11.

On June 17, 2011, Plaintiff filed an amended adversary complaint alleging the following ten claims against Deutsche Bank: (1) violations of the Truth in Lending Act ("TILA"); (2) violations of the Real Estate Settlement Procedures Act ("RESPA"); (3) violations of the Fair Credit Reporting Act ("FCRA"); (4) fraud; (5) unjust enrichment; (6) civil Racketeer Influenced and Corrupt Organizations Act ("RICO") violations; (7) violation of California's Unfair Competition Law ("UCL"); (8) breach of security instrument; (9) wrongful foreclosure; and (10) quiet title. ECF No. 46-16. Deutsche Bank filed a motion to dismiss the amended adversary complaint on August 3, 2011. ECF No. 46-4 at 15. On February 12, 2012, the Bankruptcy Court granted Deutsche Bank's motion to dismiss in part, dismissing the first eight claims alleged in the amended adversary complaint with prejudice and denying the motion as to Plaintiff's final two claims.

On October 4, 2012, Plaintiff filed a motion for leave to amend his adversary complaint for a second time, seeking to again add claims for violations of TILA and California's UCL, in addition to his surviving wrongful foreclosure and quiet title claims. ECF No. 47-7. The Bankruptcy Court denied this motion, stating that the TILA and UCL claims were not cognizable as stated in the proposed second amended adversary complaint. ECF Nos. 48-1, 48-2.

On February 23, 2013, Plaintiff filed a motion for summary judgment on the surviving quiet title and wrongful foreclosure claims; Deutsche Bank thereafter filed its own cross-motion for summary judgment as to the same claims. ECF No. 46-4 at 30-31. On May 23, 2013, the Bankruptcy Court granted Deutsche Bank's cross-motion for summary judgment and denied Plaintiff's motion for summary judgment. ECF Nos. 48-3,

48-4.  Judgment for Deutsche Bank was entered on July 2, 2013.  ECF No. 48-5. Plaintiff filed a motion to vacate the judgment, which was denied.  ECF No. 46-4 at 33; ECF No. 48-6; ECF No. 48-7.  Plaintiff then appealed the judgment.  ECF No. 46-4 at 35.  On December 16, 2013, the Ninth Circuit Court of Appeal's Bankruptcy Panel denied Plaintiff's appeal for lack of jurisdiction because the appeal was untimely.  ECF No. 48-8.

On December 23, 2013, Defendants filed a notice stating that Plaintiff's bankruptcy proceedings had reached a final resolution.  ECF No. 26.  As a result, this Court lifted its stay on the present action on February 4, 2014.  ECF No. 29.  Plaintiff subsequently filed a motion for leave to amend his complaint for a second time along with a proposed Second Amended Complaint ("SAC").  ECF Nos. 40, 43.  On July 1, 2014, the assigned Magistrate Judge granted Plaintiff's motion and deemed the proposed SAC the operative complaint in this matter.  ECF No. 42. Defendant Wells Fargo now seeks to dismiss the SAC pursuant to Federal Rule of Civil Procedure 12(b)(6).  ECF No. 62.

**B.  Factual Allegations in Second Amended Complaint**

In January 2006, a family law court in Placer County ordered Plaintiff to obtain an evaluation of his home's value for purposes of a marital settlement in Plaintiff's pending divorce proceedings.  ECF No. 43 at 3.  Plaintiff went to the business branch of Wells Fargo Bank in Loomis, California.  Id.   While there, Plaintiff was advised that he would need to contact Wells Fargo's home mortgage division located in Roseville, California, if he wanted to complete the valuation process for his home and apply for a loan to settle the marriage estate.  Id.  Plaintiff went to the Wells Fargo branch in Roseville, where he met with Christine Medina, a broker for Wells Fargo.  Id.  During the loan application process, Plaintiff was required to provide Wells Fargo with a number of documents regarding his finances, including his tax returns and bank statements.  Id.

Medina later interviewed Plaintiff by telephone regarding his income, place of residence, job history and other information.  Id.  Medina subsequently notified plaintiff over the phone "that he was qualified for a loan that would effectively 'cash out' newly

1  acquired equity as a result of his residence being over-valued" by Wells Fargo. Id. at
2  3-4. Medina then asked Plaintiff to come to Wells Fargo's Roseville branch to sign the
3  loan papers. Id. at 4. Plaintiff decided he would refinance his home in order to comply
4  with the family court's order. Id.

5  Plaintiff went to the Wells Fargo in Roseville to fill out the loan paperwork. Id.
6  When Plaintiff arrived, he was placed in a room with a manager of the office and a
7  notary, who was present for Plaintiff's signing of the loan documents. Id. "Plaintiff was
8  never provided with any contracts to review prior to the meeting." Id. The manager
9  advised Plaintiff that the notary had to leave for another signing in Folsom, California,
10 within the next hour and that Plaintiff needed to immediately sign the documents with the
11 aid of yellow tabs Wells Fargo had pre-attached to the loan documents. Id. "Plaintiff
12 was then guided through the signing and had completed the signing of all necessary
13 documents within a period of less than 15 minutes." Id. Plaintiff was not given an
14 opportunity to review these documents and was sent home without copies of any of the
15 documents. Id.

16 Later that same week, Wells Fargo called Plaintiff and told him to come back to
17 the bank to pick up the loan documents the following week. Id. The next week, Plaintiff
18 returned and picked up a large file of documents that, according to Wells Fargo, were
19 the loan contract documents. Id. However, Plaintiff later learned that the documents in
20 the folder "were blank and contained only miniscule information." Id. Wells Fargo told
21 Plaintiff that this was a customary practice and advised him not to worry because the
22 Bank's policy dictated that the originals were to be placed into the custody of a master
23 document custodian. Id.

24 Plaintiff made every installment payment due under the loan contract until August
25 of 2008, when Plaintiff noticed that no principal on the loan was being paid down through
26 his payments. Id. Plaintiff contacted the servicer of his loan to inquire into why this was
27 happening. Id. The servicer told Plaintiff "that the loan was an interest-only loan." Id.
28 However, Wells Fargo's employee, Medina, had told Plaintiff "that the loan was a fully

1  amortized, standard performing 'principal and interest' loan." Id. "Plaintiff was never told
2  that his loan was interest-only" prior to being notified by the loan servicer. Id.
3       "Plaintiff executed a dispute in writing to the loan servicer challenging the validity
4  of the loan." Id. Plaintiff subsequently attempted to rescind the loan contract by sending
5  a writing to counsel for the loan's beneficiary stating Plaintiff's intention to rescind. Id. at
6  4-5. Plaintiff received a written reply from the beneficiary's counsel indicating that the
7  loan had not been rescinded. Id. at 5.
8       Plaintiff alleges that he later learned that Wells Fargo had placed false information
9  in Plaintiff's loan application documents, including false information regarding Plaintiff's
10 income, the amount of time Plaintiff had lived in his home, the amount of time Plaintiff
11 had been employed, and the actual value of the property, in order to ensure that Plaintiff
12 would qualify for a loan that he would otherwise have been unable to obtain. Id. at 7-8.
13 Plaintiff further alleges that Deutsche Bank was the purported assignee of the loan
14 contract Plaintiff entered into with Wells Fargo and had "ratified the actions" of Wells
15 Fargo. Id. at 8. Plaintiff alleges that Deutsche Bank received payment from Select
16 Portfolio when it executed the Notice of Default on Plaintiff's loan. Id. at 17-18. In
17 addition, Plaintiff alleges that "Select [Portfolio] and Quality [Loan] . . . were complicit in
18 the acts [of Wells Fargo] by an agency relationship." Id. at 20. Finally, Plaintiff alleges
19 that all defendants illegally "took [P]laintiff's home by way of non-judicial foreclosure." Id.
20 at 12.
21       On the basis of these factual allegations, Plaintiff asserts the following six claims
22 against all defendants in the SAC: (1) "illegal contract"; (2) breach of contract; (3) TILA
23 violations; (4) violations of the Equal Credit Opportunity Act ("ECOA"); (5) FCRA
24 violations; and (6) violations of California's UCL. Id. at 11-23.
25 ///
26 ///
27 ///
28 ///

1 **STANDARD**

On a motion to dismiss for failure to state a claim under Federal Rule of Civil Procedure 12(b)(6), all allegations of material fact must be accepted as true and construed in the light most favorable to the nonmoving party. Cahill v. Liberty Mut. Ins. Co., 80 F.3d 336,337-38 (9th Cir. 1996). Rule 8(a)(2) requires only "a short and plain statement of the claim showing that the pleader is entitled to relief" in order to "give the defendant fair notice of what the . . . claim is and the grounds upon which it rests." Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007) (quoting Conley v. Gibson, 355 U.S. 41, 47 (1957)). A complaint attacked by a Rule 12(b)(6) motion to dismiss does not require detailed factual allegations. However, "a plaintiff's obligation to provide the grounds of his entitlement to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." Id. (internal citations and quotations omitted). A court is not required to accept as true a "legal conclusion couched as a factual allegation." Ashcroft v. Iqbal, 129 S. Ct. 1937, 1950 (2009) (quoting Twombly, 550 U.S. at 555). "Factual allegations must be enough to raise a right to relief above the speculative level." Twombly, 550 U.S. at 555 (citing 5 Charles Alan Wright & Arthur R. Miller, Federal Practice and Procedure § 1216 (3d ed. 2004) (stating that the pleading must contain something more than "a statement of facts that merely creates a suspicion [of] a legally cognizable right of action.")).

Furthermore, "Rule 8(a)(2) . . . requires a showing, rather than a blanket assertion, of entitlement to relief." Twombly, 550 U.S. at 556 n.3 (internal citations and quotations omitted). Thus, "[w]ithout some factual allegation in the complaint, it is hard to see how a claimant could satisfy the requirements of providing not only 'fair notice' of the nature of the claim, but also 'grounds' on which the claim rests." Id. (citing 5 Charles Alan Wright & Arthur R. Miller, supra, at § 1202). A pleading must contain "only enough facts to state a claim to relief that is plausible on its face." Id. at 570. If the "plaintiffs . . . have not nudged their claims across the line from conceivable to plausible, their

complaint must be dismissed." Id.  However, "[a] well-pleaded complaint may proceed even if it strikes a savvy judge that actual proof of those facts is improbable, and 'that a recovery is very remote and unlikely.'" Id. at 556 (quoting Scheuer v. Rhodes, 416 U.S. 232, 236 (1974)).

## ANALYSIS

### A. Parties' Requests for Judicial Notice

Before the Court addresses the merits of Defendant Wells Fargo's Motion to Dismiss, the Court will address the parties' requests for judicial notice (ECF Nos. 62-1, 79-2).  Pursuant to Federal Rules of Evidence 201, "the court may judicially notice a fact that is not subject to reasonable dispute because it: (1) is generally known within the trial court's territorial jurisdiction; or (2) can be accurately and readily determined from sources whose accuracy cannot reasonably be questioned."

Generally, a court may not consider material beyond the complaint in ruling on a motion to dismiss pursuant to Federal Rules of Civil Procedure 12(b)(6) because if a court considers matters outside the pleading, the motion to dismiss is converted to a motion for summary judgment.  Lee v. City of Los Angeles, 250 F.3d 668, 688 (9th Cir. 2001).  There are two exceptions to this rule.  "First, a court may consider material which is properly submitted as part of the complaint . . . . If the documents are not physically attached to the complaint, they may be considered if the documents' authenticity is not contested and the plaintiff's complaint necessarily relies on them." Id. (internal citations and quotation marks omitted).  Second, "a court may take judicial notice of matters of public record without converting a motion to dismiss into a motion for summary judgment, as long as the facts are not subject to reasonable dispute." Intri-Plex Technologies, Inc. v. Crest Grp., Inc., 499 F.3d 1048, 1052 (9th Cir. 2007) (internal citations and quotation marks omitted).

///

### 1. Defendant's Requests

Defendant asks the Court to take notice of eight documents: a deed of trust, a notice of default, two notices of trustee sale, an assignment of deed of trust, a trustee's deed upon sale, a voluntary petition filed in Bankruptcy Court, and a discharge of debtor entered by the Bankruptcy Court. ECF No. 62-1.

The first six documents are documents that were recorded in the Placer County Recorder's Office. As undisputed matters of public record, the Court may take judicial notice of their existence See Lee, 250 F.3d at 688-89. The final two documents involve matters of public record in related judicial proceedings, of which the Court may also take judicial notice. See Biggs v. Terhune, 334 F.3d 910, 916 n.3 (9th Cir. 2003) ("Materials from a proceeding in another tribunal are appropriate for judicial notice."); Commodity Futures Trading Comm'n v. Co. Petri Marketing Group, Inc., 680 F.2d 573, 584 (9th Cir. 1982) (taking notice of pleadings).

Wells Fargo also incorporates the judicial notice request of Deutsche Bank and Select Portfolio Servicing, ECF Nos. 46-48. See ECF No. 62 at 3, n.6. To the extent that these 31 documents were noticed by the Magistrate Judge in his Findings and Recommendations (see ECF No. 65 at 3-5), they are noticed by this Court as the Court has adopted the Findings and Recommendations in full (see ECF No. 86).

### 2. Plaintiff's Requests

Plaintiff asks the Court to take notice of six documents: an amicus brief in an unrelated case; a published Ninth Circuit Court of Appeals opinion; the United States Securities & Exchange Commission website, which contains documents from the Accredited Mortgage Loan Trust Series 2006-2; Plaintiff's loan application; Plaintiff's income tax return; and Truth in Lending disclosures that Plaintiff signed. ECF No. 79-2. Defendant objects to all of Plaintiff's requests except for his request for judicial notice of the Ninth Circuit Court of Appeals' decision. ECF No. 84.

These are the same documents that Plaintiff attempted to have noticed by Magistrate Judge Newman in conjunction with Deutsche Bank, Select Portfolio, and

Quality Loan's Motion to Dismiss. See ECF No. 57. In his Findings and Recommendations, the Magistrate Judge denied these requests because the documents were irrelevant to the motion to dismiss and were offered to support the substantive allegations in the SAC. See ECF No. 65 at 6.

This Court has already reviewed and adopted, in full, the Magistrate Judge's Findings and Recommendations, including the findings on Plaintiff's request for judicial notice of these documents. See ECF No. 86. Therefore, the Court will not take judicial notice of these documents.

### B. Claim Preclusion

Like its previously dismissed codefendants, Wells Fargo argues that Plaintiff's claims as to Wells Fargo in the SAC should be dismissed with prejudice under the doctrine of claim preclusion. Claim preclusion "bars litigation in subsequent action of any claims that were raised or could have been raised in the prior action." Owens v. Kaiser Foundation Health Plan, Inc., 244 F.3d 708, 713 (9th Cir. 2001) (internal quotation marks omitted). Under federal law,[4] the doctrine of claim preclusion "is applicable whenever there is (1) an identity of claims, (2) a final judgment on the merits, and (3) identity or privity between parties." Id.

#### 1. Identity of Claims

"The central criterion in determining whether there is an identity of claims between the first and second adjudications is whether the two suits arise out of the same transactional nucleus of facts." Id. at 714. The Court must also consider: "(1) whether rights or interests established in the prior judgment would be destroyed or impaired by prosecution of the second action; (2) whether substantially the same evidence is presented in the two actions; and (3) whether the two suits involve infringement of the

---

[4] Defendants removed this case from California state court on the basis of both federal question and diversity of citizenship jurisdiction. ECF No.1. Federal preclusion rules apply in cases where federal-court jurisdiction is based on the presence of a federal question. See Taylor v. Sturgell, 533 U.S. 880, 891 (2008). In diversity cases, "federal law incorporates the rules of preclusion applied by the State in which the rendering court sits." Id. In California, a court must apply federal preclusion rules when determining the preclusive effect of a prior federal court judgment. Younger v. Jensen, 26 Cal.3d 397, 411 (1980). Thus, federal preclusion rules apply under either basis for subject matter jurisdiction asserted herein.

same right." See C.D. Anderson & Co. v. Lemos, 832 F.2d 1097, 1100 (9th Cir. 1987); accord Headwaters Inc. v. United States Forest Serv., 399 F.3d 1047, 1052 (9th Cir. 2005); Littlejohn v. United States, 321 F.3d 915, 920 (9th Cir. 2003).

In most cases, "the inquiry into the 'same transactional nucleus of facts' is essentially the same as whether the claim could have been brought in the first action." United States v. Liquidators of European Fed. Credit Bank, 630 F.3d 1139, 1151 (9th Cir. 2011). "A plaintiff need not bring every possible claim. But where claims arise from the same factual circumstances, a plaintiff must bring all related claims together or forfeit the opportunity to bring any omitted claim in a subsequent proceeding." Turtle Island Restoration Network v. U.S. Dep't of State, 673 F.3d 914, 918 (9th Cir. 2012). "Newly articulated claims based on the same nucleus of facts may still be subject to a [claim preclusion] finding if the claims could have been brought in the earlier action." Tahoe-Sierra Pres. Council, Inc. v. Tahoe Reg' l Planning Agency, 322 F.3d 1064, 1078 (9th Cir. 2003); United States ex rel. Barajas v. Northrop Corp., 147 F.3d 905, 909 (9th Cir. 1998) ("It is immaterial whether the claims asserted subsequent to the judgment were actually pursued in the action that led to the judgment; rather, the relevant inquiry is whether they could have been brought.").

The claims in Plaintiff's SAC are either the same as the claims brought in the adversary proceeding in the bankruptcy court or they are claims that could have been raised because they arise out of the "same transactional nucleus of fact." Both complaints involve claims related to the refinancing of Plaintiff's residential mortgage, the terms of his residential loan, the servicing of his residential loan, Plaintiff's attempt at rescission of that loan, and the non-judicial foreclosure of the loan. See ECF No. 46-16.

While most of Plaintiff's claims are directed at "Defendants" generally, it appears to the Court that the claims against Wells Fargo stem from the alleged falsification of Plaintiff's loan application. The loan application was created by a Wells Fargo employee and signed at a Wells Fargo branch, but the promissory note and deed of trust were between Plaintiff and Accredited Home Lenders. ECF No. 45-2 at Exhibit 1. Since this

was the extent of Wells Fargo's involvement with Plaintiff's loan, any claims specific to Wells Fargo must stem from the origination of the loan.  In his first amended adversary complaint, Plaintiff asserted a claim under the TILA based on allegations that Deutsche Bank "or its agents" falsified plaintiff's loan application.  See ECF No. 46-16 at 22-25.  The Bankruptcy Court considered this claim when it rendered its decision in the adversary proceeding.  See ECF No. 47-2 at 17.  Therefore, the claims against Wells Fargo in the SAC are the same as those brought in the adversary proceeding and there is consequently an identity of claims.

### 2. Final Judgment on the Merits

The Magistrate Judge's Findings and Recommendations (ECF No. 65), already adopted in full by this Court (ECF No. 86), determined that a decision from a bankruptcy court can be given preclusive effect.  Essentially, under current Ninth Circuit law, decisions in core and non-core bankruptcy proceedings can be a final judgment with the consent of the parties.  28 U.S.C. § 157(c)(2) (non-core claims); In re Bellingham Ins. Agency, Inc., 702 F.3d 553 (9th Cir. 2012) (core claims).[5]  In Plaintiff's first amended adversary complaint in the Bankruptcy Court, he stated, "Plaintiff consents to the entry of final orders or judgment by the bankruptcy court."  This shows that Plaintiff consented to the decision in the adversary claim serving as a final judgment in the case.  Therefore, the Bankruptcy Court's dismissal and grant of summary judgment in favor of Deutsche Bank is a final judgment for purposes of claim preclusion.  Mpoyo v. Litton Electro-Optical Sys., 430 F.3d 985, 988 (9th Cir. 2005) ("The second res judicata element is satisfied by a summary judgment dismissal which is considered a decision on the merits for res judicata purposes."); Hells Cyn. Preserv. Council v. U.S. Forest Serv., 403 F.3d 683, 686 (9th Cir. 2005) ("'[F]inal judgment on the merits' is synonymous with 'dismissal with prejudice.'").

///

---

[5] This holding was left undisturbed by the recent Supreme Court decision, Executive Benefits Ins. Agency v. Arkison, 134 S. Ct. 2165, 2170, n.4 (2014) (reserving the issue of "whether Article III permits a bankruptcy court, with the consent of the parties, to enter final judgment on a [claim] . . . for another day").

### 3. Privity

Privity is the main issue that must be decided on this Motion since the adversary proceeding in Bankruptcy Court was only between Deutsche Bank and Plaintiff. Wells Fargo was not added to this case until the SAC, which was filed in July 2014. "Privity . . . is a legal conclusion designating a person so identified in interest with a party to former litigation that he represents precisely the same right in respect to the subject matter involved." Headwaters Inc. v. U.S. Forest Serv., 399 F.3d 1047, 1052-53 (9th Cir. 2005) (internal citations and quotation marks omitted). "Even when the parties are not identical, privity may exist if 'there is 'substantial identity' between parties, that is, when there is sufficient commonality of interest.'" Tahoe-Sierra Pres. Council, 322 F.3d at 1081 (quoting In re Gottheiner, 703 F.2d 1136, 1140 (9th Cir. 1983)). "[P]rivity is a flexible concept dependent on the particular relationship between the parties in each individual set of cases." Tahoe-Sierra Pres. Council, 322 F.3d at 1081. Generally, "federal courts will bind a non-party whose interests were represented adequately by a party in the original suit." In re Schimmels, 127 F.3d 875, 881 (9th Cir. 1997). "In addition, 'privity' has been found where there is a 'substantial identity' between the party and nonparty, . . . and where the interests of the nonparty and party are 'so closely aligned as to be 'virtually representative.''" Id. (internal citations omitted).

At the adversary proceeding, Plaintiff claimed that Deutsche Bank was liable for Wells Fargo's alleged conduct in the SAC—violating the TILA by obtaining the loan under fraudulent circumstances. In the adversary proceeding, Deutsche Bank argued that the Plaintiff's TILA claim was untimely under the statute of limitations, and the Bankruptcy Court agreed. See ECF No. 47-2 at 19-21. This is presumably the same argument that Wells Fargo would have made at the proceeding. Indeed, Wells Fargo makes this same argument in its Motion to Dismiss. See ECF No. 62 at 19. Therefore, the Court finds that Wells Fargo's interests were adequately represented at the adversary proceeding by Deutsche Bank, creating privity between Deutsche Bank and Wells Fargo.

Since the three requirements for claim preclusion are met, the Court finds that Wells Fargo's Motion to Dismiss must be granted.

## CONCLUSION

For the reasons set forth above, Wells Fargo's Motion to Dismiss (ECF No. 62) is GRANTED, with prejudice.  The Clerk of Court is directed to close the file.

IT IS SO ORDERED.

Dated:  January 12, 2015

_____
MORRISON C. ENGLAND, JR, CHIEF JUDGE
UNITED STATES DISTRICT COURT